(No: 21653.—

GEORGE B. SCOTT, Defendant in Error, *vs.* THE INTER-INSURANCE EXCHANGE OF THE CHICAGO MOTOR CLUB, Plaintiff in Error.

*Opinion filed April 22, 1933—Rehearing denied June 9, 1933.*

HEARD, C. J., and DUNN, J., dissenting.
DEYOUNG, J., took no part.

MILLER, GORHAM, WALES & ADAMS, (HENRY W. WALES, EDWARD R. ADAMS, and HERBERT C. DEYOUNG, of counsel,) for plaintiff in error.

JOHN H. KAY, and ROY J. EGAN, for defendant in error.

Mr. JUSTICE ORR delivered the opinion of the court:

An action of trespass on the case on promises was brought on an insurance policy in the superior court of Cook county by George B. Scott, defendant in error, against the Inter-Insurance Exchange of the Chicago Motor Club,

plaintiff in error, hereinafter referred to as the exchange. A jury was waived, and the trial court found the issues for Scott and entered a judgment in his favor for $5691.18. Upon writ of error the Appellate Court for the First District affirmed the judgment of the superior court, and the cause comes here by *certiorari*.

Scott's amended declaration consisted of one count, wherein the policy of insurance sued upon was set out *in hæc verba.* The exchange filed a plea of general issue and two additional pleas, setting forth that Scott had not complied with policy conditions precedent to a recovery and that his action was premature.

On February 27, 1929, Scott, with the permission of and while accompanied by Peter Hanrahan, was driving the latter's automobile. On that date Hanrahan held a policy of insurance upon this automobile with the exchange and the same was then in full force and effect. Among other provisions, this policy contained a clause of additional insurance covering any person who operated Hanrahan's automobile with his permission. On Garfield boulevard, near Seeley avenue, John Repiscak was struck by an automobile driven by Abraham Sherman. As a result Repiscak was thrown in front of and struck by the automobile driven by Scott, receiving injuries from which he died the next day. On March 9, 1929, Hanrahan went to the office of the claim department of the exchange and delivered three notices and statements of the accident. The first was called "Automobile accident notice," which notified the exchange of the occurrence of the accident and contained details thereof. This notice was signed by Hanrahan. The second notice, also signed by Hanrahan, was a three-page written narrative of the accident. The third statement of the accident was made out upon a blank form furnished by the exchange, entitled "Statement of person driving car at time of accident." This statement contained the name, address and age of Scott, with details of the accident, and

was purportedly signed by both Scott and Hanrahan. The same day that Hanrahan gave the three statements to the exchange he gave a further notice in writing that a claim was being made against him and Scott as a result of the accident. This notice was in the form of a notice of attorney's lien served upon him. On March 9, 1929, the Union Bank of Chicago, as administrator of the estate of Repiscak, sued Sherman, Hanrahan and Scott for $10,000 damages. On March 19 summons in the suit was served upon Scott and Hanrahan, the latter delivering the summons to the exchange on March 23. On the filing of the declaration in the damage suit counsel for the exchange procured a copy thereof and on June 5 filed a plea on behalf of Hanrahan but did not file a plea on behalf of Scott. Scott, not then knowing of the additional assured provision of the insurance policy of Hanrahan, employed his own counsel. Upon trial of the damage suit Hanrahan was represented by counsel furnished by the exchange while Scott was represented by his own counsel. The suit resulted in a verdict against Scott for the sum of $8100 while Hanrahan was found not guilty. Judgment against Scott was subsequently entered on the verdict. During the course of the trial Scott for the first time learned that he was protected by the policy, and on May 16, 1930, he wrote a letter to the exchange. In this letter he notified the exchange of the judgment against him, that he was without funds to satisfy the judgment or to perfect an appeal, and that there was a possible liability of the exchange to him under the policy issued to Hanrahan. He further requested the exchange to prosecute the appeal from the judgment in his behalf. This the exchange refused to do, and Scott then commenced the present action.

In this court the exchange contends that Scott is not entitled to recover on the contract of insurance issued to Hanrahan, first, because he did not comply with conditions precedent set forth in the insurance contract, and addition-

ally because Hanrahan did not comply with the same conditions precedent. Other reasons urged against recovery by the exchange are, that the action of Scott is premature and that he has failed to show that he comes within the terms of the policy. The exchange asserts that even though it waived the breach of the condition precedent as to Hanrahan, that waiver did not cover a similar breach by Scott. The statement is also made that an interpretation of the policy contrary to the views of the exchange would constitute a re-writing of the policy, which was made by parties who are *sui juris*.

The condition precedent about which the exchange concerns itself is contained in clause 6 of the policy, entitled "Defense of suits," in the sub-head, "Reporting accidents and claims—A." The pertinent portion thereof reads: "Upon the occurrence of an accident covered by this contract the assured shall give immediate written notice thereof, with the fullest information obtainable at the time, to the attorney in fact, at its main office in Chicago, Illinois. If a claim is made on account of such accident the assured shall give like immediate notice of such claim, with full particulars. * * * Each of these requirements shall be construed as a condition precedent to any liability of the exchange."

Preliminary to a discussion as to whether there was compliance with the condition in the policy respecting the giving of notice, an analysis of the main features of the policy bearing thereon is necessary. This policy was issued by the exchange to Hanrahan. Its purpose was to protect him from or indemnify him for damages or loss which he might suffer through the operation of his automobile. Its terms also took cognizance of the fact that Hanrahan might suffer loss or damage when he was not personally operating the automobile but while it was being operated by another with his consent. In this respect the insurance contract contemplated the existence of a relationship between Han-

rahan and a person operating his car with his consent which was not predicated upon an employer and employee relationship. The ultimate protection sought by Hanrahan through the purchase of this policy, and the ultimate protection sold by the exchange to him, was the protection of Hanrahan from consequences arising from accident caused by his automobile, whether operated by himself personally or by some other person with his permission. The policy is bare of any statement predicating the responsibility of the exchange to any such third person upon condition that Hanrahan should notify the person whom he permitted to operate his car that the operator was likewise insured by the policy. Clause 2 of the policy, under the heading "Additional assured," contains the following language: "In the same manner and under the same conditions as available to the named assured, the insurance provided in clauses one (1) and two (2) and the provisions of clause six (6) shall inure to the benefit of any person or persons while riding in or lawfully operating any of the automobiles described in the schedule, and to any person, firm or corporation legally responsible for the operation thereof, provided such use or operation is with the permission of the named assured."

When, on March 9, 1929, Scott's name was affixed to a notice entitled "Statement of person driving car at time of accident," upon the blank form furnished by the exchange, he did not know that he was covered as an "additional assured" by the policy. It is therefore apparent that he did not make this statement on the theory that he was doing so for his own benefit or protection. This statement was made for Scott in aid of any right or benefit that Hanrahan, as the direct assured, had under the policy. To adopt the contention of the exchange would require every additional assured under like policies to first ascertain from the owner whose automobile he was driving whether or not he was protected by any insurance policy the owner might

carry, in order to assure himself of protection by giving notice in his own behalf immediately after an accident. Such a requirement would lead to unreasonable and unjust results.

When we come to consider the contention of the exchange that Hanrahan did not comply with the condition precedent set forth in the policy no necessity devolves upon this court to treat it at length. This is so because the exchange has admitted the commission of acts which waived any insufficiency of notice as a condition precedent on the part of Hanrahan. The action taken by the exchange in furnishing its own counsel to represent Hanrahan in the suit brought against him by the administrator of Repiscak is a conclusive waiver of the policy requirement. But does this waiver as to Hanrahan's failure redound to the benefit of Scott? Under the circumstances of this particular case we believe that it does, basing our opinion upon the fact that the exchange, at the same time that it received the notices and statements from Hanrahan, also received a statement on behalf of Scott, over his purported signature, which acquainted the exchange with his name and address and the fact that he was the driver of the automobile. This information to the exchange was reinforced by the two statements signed by Hanrahan that Scott was driving the car at the time of the accident. The exchange after March 9, 1929, was not placed in any different situation because of any lack of knowledge that Scott, and not Hanrahan, was driving the car at the time of the accident.' It was fully informed of this fact from the beginning. The record fails to disclose any disclaimer or liability by the exchange to Hanrahan, or any reservation of rights by it so far as he is concerned. It accepted his notices of the accident without complaint as to the time they were given. The exchange relies upon the conversation between its representative, named Dillon, and Hanrahan to show a disclaimer as to any liability so far as Scott is concerned. That conversation was

indefinite and inconclusive and Scott was not present and knew nothing of it, so it cannot operate as a disclaimer.

Contracts of insurance are the same as other contracts and should be liberally construed to effect the intention of the parties. (*Yeaton* v. *Fry*, 3 U. S. (L. ed.) 101.) The insurer having framed the contract, it will, in case of doubt, be construed most strongly against it and in favor of the assured, especially so if the contract contains a forfeiture clause. (*Hunt* v. *Springfield Fire Ins. Co.* 196 U. S. 47, 49 L. ed. 381; *Budelman* v. *American Ins. Co.* 297 Ill. 222; *Treolo* v. *Auto Ins. Underwriters*, 348 id. 93.) The exchange waived the short delay by Hanrahan in giving it notice of the accident, and it cannot be allowed to say that such action did not also waive the delay caused by Scott respecting his rights under the same policy. This is the only logical view to take, inasmuch as the rights of Scott were created by the common intentions of Hanrahan and the exchange as manifested in their contract. The situation that Scott was placed in can be fairly compared to that of a beneficiary under a life insurance policy who did not know of the existence of the policy creating his rights or of one who was ignorant of the death of the insured. In such circumstances a beneficiary is excused for any delay in the giving of notice within the time specified in the policy, where the delay was due to a lack of such knowledge. (*Cady* v. *Fidelity and Casualty Co.* 134 Wis. 322, 113 N. W. 967; *McElroy* v. *John Hancock Life Ins. Co.* 88 Md. 137, 41 Atl. 112; *Solomon* v. *Continental Fire Ins. Co.* 160 N. Y. 595, 55 N. E. 279.) Likewise in *Concordia Fire Ins. Co.* v. *Waterford*, 145 Ark. 420, 224 S. W. 953, 13 A. L. R. 1387, where the insurer denied liability on a fire insurance policy the existence of which was not discovered by the insured until more than sixty days after the loss and after the expiration of the period fixed by the policy for giving notice of loss, it was held that the circumstances excused the insured for failure to give notice of

loss within the time fixed. The rule has also been applied to cases arising under accident policies. (14 R. C. L. 1333; 14 L. R. A. (n. s.) 503.) In the present case the exchange was not compelled to go without any notice of the accident and of the claim made thereunder, as it had possession of a written, signed statement made in behalf of Scott, thus making indispensable the application of the rule stated in the cases last cited. The exchange possessed full knowledge from which to determine its liabilities and rights, which, coupled with the later statement made in behalf of Scott that he expected the performance of the obligations in the policy that were for his benefit, was all the information required by the exchange to activate it in perfecting the appeal. This it did not choose to do.

The policy also contained this provision: "No action shall be maintained against the exchange under this contract for any loss or damage suffered by the assured arising out of damage to the property of others or injury to (or death resulting therefrom) the persons of others, or expense incurred in defending suits against the assured unless brought after the liability of the assured and amount of damage to such property or injury to (or death resulting therefrom) the persons of others shall have been fixed either by a final judgment against the assured by the court of last resort after trial of the issue or by agreement between the parties with the written consent of the exchange." This provision was for the protection of the exchange, to prevent Scott from settling the claim or paying the judgment with the expectation of holding the exchange liable therefor prior to the time when a court of last resort could pass upon the claim. This provision must be construed in connection with the rest of the contract, particularly that part which obligated the exchange to defend Scott against any suit to enforce a claim. The policy reserved to the exchange full control over the defense of any action, and in consideration thereof it agreed to defend any action at its own cost. The

insurer agreed here, as did the insurer in *Ravenswood Hospital* v. *Casualty Co.* 280 Ill. 103, to defend a suit at its own cost. We held in that case that when the injury happened the liability arose. Consequently the obligation arose here to defend Scott in the trial court. This burden the exchange refused to assume, disclaiming liability under the policy. On account of that rescission the exchange cannot now complain that the suit against it is premature. *Falco* v. *Zurich General Accident Ins. Co.* 157 N. E. 852, is not in point, as no action could lie against the insurer there "except for reimbursement of the amount of loss actually sustained and paid in money by the assured."

In conclusion, answering the claim of the exchange that a construction of the policy in favor of Scott would be a re-writing of a contract made by parties *sui juris,* we must say that this argument is without merit. This point is based upon the fact that the exchange is in apparent disagreement with much that the Appellate Court said in its opinion. We are not reviewing the reasoning contained in that opinion but are reviewing the judgment of that court. Error cannot be assigned upon the opinion. If the decision of the Appellate Court is correct, the fact that the reasoning of the opinion is erroneous in no way affects the judgment when it is before us for review. *Pelouze* v. *Slaughter,* 241 Ill. 215; *Scoville Manf. Co.* v. *Cassidy,* 275 id. 462.

For the reasons given, the judgment of the Appellate Court for the First District sustaining the judgment of the superior court of Cook county is affirmed.

*Judgment affirmed.*

HEARD, C. J., and DUNN, J., dissenting.

Mr. JUSTICE DEYOUNG took no part in this decision.