SAINT PAUL MERCURY INDEMNITY
COMPANY, Appellant,

v.

VALDOSTA MILLING COMPANY,
Appellee.

No. 16713.

United States Court of Appeals
Fifth Circuit.

April 7, 1958.

Rehearing Denied May 16, 1958.

Francis P. Conroy, Delbridge L. Gibbs, Jacksonville, Fla., Marks, Gray, Yates & Conroy, Jacksonville, Fla., of counsel, for appellant.

Olin E. Watts, W. A. Hamilton, John F. Corrigan, Jacksonville, Fla., Jennings, Watts, Clarke & Hamilton, Jacksonville, Fla., of counsel, for appellee.

Before HUTCHESON, Chief Judge, and BORAH and TUTTLE, Circuit Judges.

HUTCHESON, Chief Judge.

This appeal from a judgment entered in favor of plaintiff on facts,[1] as to which it is stipulated and agreed that there is

1. These, as stated and found by the district judge in the judgment, are:

"(a) Defendant, under its products liability insurance policy No. 1302442, agreed to pay on behalf of plaintiff all sums which plaintiff should become obligated to pay by reason of the liability imposed upon it by law for damages on account of the handling, use or condition of plaintiff's products, and agreed to defend in plaintiff's name and on its behalf any suit against plaintiff seeking such damages, subject to terms of said policy.

"(b) In the latter part of December, 1948, plaintiff was advised by one of its retailer customers, W. H. Roe of Ocala, Florida, that some horses owned by one of Roe's customers had been injured alledgedly from consuming feed manufactured by plaintiff. In the early part of 1949, George Garretson of Ocala,

Florida, visited plaintiff's offices in Valdosta, Georgia, claimed that some of their horses had died from eating feed manufactured by plaintiff, and demanded that plaintiff pay them for said loss. Notice of each of said incidents was verbally communicated to B. H. Roberts, Jr. of the Roberts Insurance Agency, the defendant's agent who sold the insurance policy above described to the plaintiff.

"(c) On June 22, 1949, Garretson instituted suit against plaintiff in the Circuit Court of Marion County, Florida, claiming damages for the death of the horses alleged to have been caused by poison in the feed manufactured and distributed by plaintiff. Service of process upon plaintiff in said suit was attempted to be made upon one Frank L. Futch of Futch Produce Company, Live Oak, Florida, which company had been designated by plaintiff as its 'Principal Agent in

no dispute, and on motions for summary judgment filed by both parties, presents a single question for our decision. This question is whether the district judge was right in holding: that when the insured notified the defendant insurer that a default judgment had been entered against it, in a pending suit concerning matters covered by the policy, and requested the defendant to move to set aside the default judgment and otherwise defend the insured therein, defendant became and was obligated under the policy terms to do so; and that in failing so to do, it breached and violated the terms of the insurance policy and became and was obligated to repay plaintiff the moneys it had put out in defending the suit.

Setting out in its brief the policy provisions [2] on which it relies and invoking the generally recognized principle that compliance with "the notice of accident" condition is a prime requisite of suit, appellant insists that under the undisputed, indeed admitted, facts, plaintiff breached the conditions of its contract and is not entitled to recover.

Florida' in a document filed with the Commissioner of Agriculture of the State of Florida, which document was required by said Commissioner of Agriculture as a condition precedent to permission for plaintiff to ship its feed into Florida. Frank L. Futch did not notify plaintiff of his receipt of the summons purportedly served upon him, and on December 5, 1949, a judgment by default was entered against plaintiff in the suit in the amount of $11,996.67.

"(d) Plaintiff first learned of the suit and judgment on or about Sept. 11, 1950, when it received a letter demand for payment of said judgment from the Garretsons' attorney. Plaintiff notified defendant thereof by a letter dated Sept. 21, 1950, in which plaintiff demanded that defendant take whatever steps were necessary to fully and completely protect the interests of plaintiff in connection with said suit and judgment.

"(e) By letter dated Oct. 2, 1950, addressed to plaintiff, defendant denied any obligation or liability under said insurance policy in respect to said suit and judgment, including the payment of the judgment and the taking of any steps to set aside, vacate or otherwise attack the validity of said judgment. Further efforts of plaintiff to persuade defendant to reconsider said decision were fruitless.

"(f) Plaintiff thereafter employed attorneys to vacate and set aside said judgment, and the efforts of the attorneys resulted in the decision of the Supreme Court of Florida in the case of Valdosta Milling Co. v. Garretson, 54 So.2d 196, decided Dec. 4, 1951, which vacated and set aside said judgment, remanding the same for a new trial, for the reasons set forth therein. Defendant then took over the defense of said action and defended plaintiff therein in accordance with the terms of said insurance policy.

"(g) The Court finds that the defendant was obligated, after having been notified by plaintiff of the pendency of and the existence of a default judgment against plaintiff in the Garretson suit in September, 1950, to defend the plaintiff therein at defendant's expense under the terms of said insurance policy; and by reason of its refusal so to do, defendant breached and violated the terms of said insurance policy and is obligated to pay plaintiff damages suffered by it as a result of said breach.

"(h) The Court further finds that plaintiff was not guilty of any negligence or laches in failing to learn of the pendency of the Garretson suit or the existence of said default judgment against it prior to Sept. 11 1950, and the knowledge of Frank L. Futch (on whom service of process in the Garretson suit was attempted) concerning the Garretson suit was not imputable to the plaintiff."

2. "9. Notice of Accident. Upon the occurrence of an accident written notice shall be given by or on behalf of the Insured to the Company or any of its authorized agents as soon as practicable. Such notice shall contain particulars sufficient to identify the Insured and also reasonably obtainable information respecting the time, place and circumstances of the accident, the names and addresses of the injured and of available witnesses."

"10. Notice of Claim or Suit. If claim is made or suit is brought against the Insured, the Insured shall immediately forward to the Company every demand, notice, summons or other process received by him or his representative."

"12. Action Against Company. No action shall lie against the Company unless, as a condition precedent thereto, the insured shall have fully complied with all of the terms of this policy. * * * "

Appellee, taking its stand upon the facts as the district judge stated them and on the firm ground that the defendant breached paragraph 9(b), Section II of the insuring agreement,[3] points to the uncontested findings showing that plaintiff was not guilty of either negligence or laches in not earlier learning of the pendency of the suit or of the entry therein of the default judgment against it.

So pointing, it insists that the record establishes, as matter of law, defendant's breach and its consequent liability to plaintiff to repay it the expenses it had incurred in procuring the setting aside of the default judgment.

█ We find ourselves in complete agreement with this view. The defendant, after plaintiff had obtained a reversal of the default judgment, itself recognizing that plaintiff was not in default under the policy, undertook to and did defend the suit and thus, by its own construction of the controlling policy provisions, affirmed that plaintiff had not breached the conditions of the policy and had not released appellant from its obligation to defend the suit. Furthermore, the slightest reflection on the undisputed facts demonstrates at once, we think, the soundness of the judgment appealed from and the underlying fallacy in defendant's attack upon it. This fallacy has its seat in the unfounded assumption that upon the entry of the default judgment, the suit was no longer pending and the obligation of the insured to defend against it on plaintiff's behalf was at an end.

█ The rendition of the default judgment did not bring the suit to an end. It was still a pending suit, and, under the plain terms of the contract, it became the insured's duty to defend plaintiff against the claim asserted in it when and after plaintiff, without fault in not having, and therefore in not giving, earlier notice, notified defendant of the pendency and condition of the suit.

█ We think, in short, that the whole defense turns on a quibble as to the pendency of the suit, and that nothing in Heilig v. Continental Cas. Co., 280 Ill.App. 142, on which defendant's main reliance seems to be placed, supports it. A reading of that case, and particularly of the quotation from it in appellant's brief,[4] plainly shows that the decision there turned on facts entirely different from those controlling here. If, however, we are mistaken in this view and the court did intend to hold that, because the notice did not reach the company until the default judgment had been entered, there was no pending suit for the insurer to defend, and, therefore, no obligation to defend by undertaking to set the judgment aside, we must decline to follow its teachings as contrary to the general controlling principle that, as long as the judgment is not final, the suit still pends, and the obligation to defend the insured as to it still exists.

The judgment was right. It is affirmed.

---

**3.** This provides:
"(9) * * * that as respects insurance afforded by this policy, the company shall * * * (b) defend in his name and behalf any suit against the insured alleging such injury or destruction, and seeking damages on account thereof, even if such suit is groundless, false, or fraudulent; but the company shall have the right to make such investigation, negotiations and settlement of any claim or suit as may be deemed expedient by the company."

**4.** "The contention of the defendant that it was not obligated, under the conditions of the policy above quoted to employ counsel to have the judgment of default entered against plaintiff in the personal injury case vacated and set aside, and the service of summons quashed, must be sustained. Under the conditions of the policy the defendant was required to defend plaintiff in any action brought against him only when it was notified that the action had been brought. Obviously it could not defend a personal injury action brought against Heilig when it had not notice of the pendency of the action."