ILLINOIS PRODUCE INTERNATIONAL, INC., Plaintiff,

v.

RELIANCE INSURANCE COMPANY and the Flying Tiger Line, Inc., Defendants.

RELIANCE INSURANCE COMPANY, Third-Party Plaintiff,

v.

The FLYING TIGER LINE, INC., and Kriegsman Transfer Co., Third-Party Defendants.

No. 72 C 2449.

United States District Court, N. D. Illinois, E. D.

Jan. 15, 1975.

P. Sveinbjorn Johnson, Johnson & Martin, Chicago Ill., for plaintiff, Ill. Produce.

John P. Gorman, William J. Schaefle, Clausen, Miller, Gorman, Caffrey & Witous, Chicago, Ill., for defendant and third-party plaintiff, Reliance Ins.

Frederic Weber, Lord, Bissell & Brook, Chicago, Ill., for defendant and third-party defendant, Flying Tiger.

Richard C. Moenning, Chicago, Ill., for third-party defendant, Kriegsman Transfer.

## FINDINGS OF FACT
## AND
## CONCLUSIONS OF LAW

PERRY, District Judge.

This action was tried by the court without a jury. The court has heard and considered all of the evidence adduced and heard argument of counsel. It has further considered the proposed findings of fact and conclusions of law submitted on behalf of each of the three parties by their counsel and the memoranda of the various counsel. The court, being fully advised in the premises, hereby makes the following as its findings of fact and conclusions of law herein:

### Findings of Fact

1. Plaintiff, Illinois Produce International, Inc. ("Illinois Produce"), is a corporation duly organized and existing under the laws of the State of Illinois with its principal place of business in that state; defendant and third party plaintiff, Reliance Insurance Company ("Reliance") is a citizen of the State of Pennsylvania, and defendant and third party defendant, The Flying Tiger Line, Inc. ("Flying Tiger") is a California corporation.

2. The amount in controversy, excluding interest and costs, exceeds $10,000.00.

3. Plaintiff Illinois Produce had purchased 529 live breeding hogs for shipment from Chicago to a farm near Saigon, South Viet Nam. In late 1971 it proceeded to arrange for the shipment via Flying Tiger aircraft and to purchase a certain policy of insurance from Reliance.

4. Two of the hogs were dead upon arrival in Chicago for shipment; and the remaining 527 were loaded for shipment on January 8, 1972 at Chicago. On January 10, 1972 the shipment of hogs arrived at the airport in Saigon. They were trucked to a farm approximately 10 miles from the airport and there a count showed 104 hogs were dead.

5. A claim for loss was presented by Illinois Produce to Reliance and denied. Illinois Produce then brought this action against Reliance to recover for an alleged breach of the insurance contract; and Reliance filed a third-party action against Flying Tiger and Kriegsman Transfer Co. ("Kriegsman"), seeking indemnity if judgment is entered against Reliance. Later Flying Tiger was added as a principal defendant by plaintiff's amended complaint. On motion of Reliance, Kriegsman was dismissed as a third-party defendant herein during trial.

6. In arranging for the shipment, Illinois Produce, on or about December 20, 1971, entered into a written contract with Flying Tiger, entitled Agreement of Airplane Charter, which Agreement was numbered 5308. [Plaintiff's Exhibit 2] Said contract was signed by both parties to be charged who were both corporations dealing at arm's length and had constructive knowledge of the provisions of the aforesaid contract. The contract contained the following language, in part:

"6.(c) Any article susceptible to damage as a result of any condi-

tion which may be encountered in air transportation, such as high or low temperatures, high or low atmospheric pressures, or sudden changes in either, must be adequately protected by Charterer by proper packing and any other necessary measures to insure safe transportation.

\*   \*   \*   \*   \*   \*

"9.(a) The Carrier shall not be liable for any loss, damage, delay or other result not caused by its negligence.

"(b) In addition to and without limiting the generality of paragraph 9(a), the Carrier shall not be liable for any loss, damage, delay or other result caused by:

\*   \*   \*   \*   \*   \*

"(3) The nature of the shipment, or any defect, characteristic or inherent vice thereof;

\*   \*   \*   \*   \*   \*

"(8) The death, injury or escape of live freight."

7. In late December 1971, Illinois Produce purchased a policy of insurance from Reliance and Reliance issued its policy number CP48090 on December 30, 1971 covering the shipment of the hogs in accordance with the terms and conditions of said policy. The stipulated premium of $4,200.00 was duly paid by plaintiff. By the policy terms, Reliance insured plaintiff against loss as defined and limited to 530 live hogs valued at $120,000. The policy [defendant Reliance's Exhibit 2] contained the following applicable language as a part of the printed form:

"The RELIANCE INSURANCE COMPANY, in consideration of the payment of a premium as agreed, does by this Policy insure, lost or not lost ILLINOIS PRODUCE INTERNATIONAL . . .

In the sum of One Hundred and Twenty Thousand and 00/100 ($120,-000.00) . . .

Upon Five Hundred Thirty (530) head of live hogs.

Valued at sum insured. . .

Laden on: Flying Tiger Aircraft.

Sailing on Bill of Lading Date on or about December 30th, 1971.

From Bloomington, Illinois, via Chicago, Ill., Anchorage, Alaska & Tokyo, Japan.

To Saigon, Vietnam.

And, a rubber stamp impression on the printed form, reading, in part:

"Conditions (Under Deck)

"Against all risks of physical loss of or damage to the property insured from any external cause whatsoever .. . . excluding all claims for loss or damage caused by delay, deterioration or loss of market.

\*   \*   \*   \*   \*   \*

And, as part of the printed form:

"Warranted free from claim for loss of market or . . . for loss, damage, . . . arising from delay, whether caused by a peril insured against or otherwise, . . ."

And, by manuscript endorsement stapled to the printed policy:

"This insurance covers death or destruction directly resulting from or made necessary by all risks of direct physical loss or damage to the transporting conveyance.

Animals to be in a good state of health at commencement of risk . . .

\*   \*   \*   \*   \*   \*

"_ _ _ Claims subject to confirmation by a responsible official, giving particulars and apparent cause of death.

"Insurance hereunder to attach from the time of loading on board the conveyance and to cease upon discharge therefrom. Animals walking ashore or when slung from the conveyance, walking after being taken out of the slings, to be deemed safely arrived."

8. Plaintiff in this action has contended that the clause "from any external cause whatsoever," appearing under "Conditions," as above quoted, should be controlling. Defendant Reliance has argued that the manuscript endorsement prevails over the printed matter and rubber stamped provisions and printed provisions on the policy and that it is not liable since the aircraft suffered no physical damage. Reliance has also contended that the cause of death of the hogs was extrinsic as opposed to intrinsic.

10. Pursuant to the aforesaid arrangements on January 8, 1972, the hogs were transported from El Paso, to O'Hare International Airport, Chicago, Illinois, in two trucks owned by Schumacher Trucking Company and chartered by Illinois Produce. Upon arrival in Chicago, two of the 529 hogs were dead, as aforesaid, leaving 527 that were actually loaded aboard the Flying Tiger aircraft.

11. The hogs were off-loaded under the supervision of Dwight Davis, an agent of Illinois Produce.

12. An agent of the airline, Richard Feuerherm, calculated the available floor space, the average weight of the hogs, and the amount of space suggested in United States Department of Agriculture Guidelines for Air Transportation of Livestock, and recommended to Davis that 117 pigs remain behind for another shipment. Davis insisted that the entire 527 hogs be loaded on the aircraft. The United States Department of Agriculture's guidelines [defendant Flying Tiger's Exhibit 9] called for 3.12 square feet per animal of 100 pounds and 3.96 square feet per animal of 150 pounds; and, in this shipment, only 2.5 square feet per animal was allowed.

13. On January 8, 1972, approximately five weeks after originally scheduled, 527 Hogs, then averaging 115 pounds each were loaded into 17 livestock pens and one double-deck igloo pen at Chicago O'Hare International Airport.

14. During the flight from Chicago to Anchorage, Alaska, attendants Harry Iliff, who was an agent of the plaintiff, and John Kriegsman observed the pigs to be restless and panting, but they did not make this condition known to any crew member of Flying Tiger nor did they report this condition to the crew during the entire flight. Some hogs were dead at Anchorage but no accurate count was made.

15. Cabin altitude was 7000 feet Chicago to Anchorage, 4200 feet the balance of the trip and cabin temperature measured six feet above the floor and at the rear of the aircraft was between 55–65°F. throughout the entire trip. Circulation was 30 complete changes per hour which would provide ample circulation and oxygen for the pigs.

16. Upon arrival at Saigon, the pigs were promptly off-loaded in their pens. After being removed from the aircraft, the shipper or agents of the shipper threw ice, in chunks up to 8 inches in diameter, onto the hogs. The hogs were then removed on trucks to a farm 15 miles from the airport and this trip took approximately one hour and thirty minutes.

17. Upon arrival at the farm, 104 hogs were found dead; some were discolored; many had advanced rigor mortis and others were limp. No post mortem examination was performed either at Anchorage or at Saigon to determine the cause of death of the hogs.

18. Some of the dead hogs when unloaded from trucks at the farm were limp and the court finds that their deaths took place after they were unloaded from the Flying Tiger aircraft. The only testimony concerning the number dead upon arrival at Saigon was that of John Kriegsman who testified that 60 to 80 hogs were dead upon arrival at Saigon. The court finds from the best evidence that there were 80 hogs dead upon arrival at Saigon and that the remaining 24 hogs died as a result of the icing which occurred after the hogs were taken from the aircraft.

19. At no time during the trip did the conveyance sustain damage of any kind.

20. The most probable cause of death of the 80 hogs was overcrowding in the shipping pens, resulting in spiraling hyperthermy, and complicated by porcine stress syndrome; and the most probable cause of death of the 24 hogs was having ice thrown upon the pigs after removal from the aircraft.

21. The insistence of Dwight Davis, an agent of Illinois Produce, that all the hogs be flown on one charter in such a crowded condition constituted negligence which contributed to the death of the hogs. Also Illinois Produce, through its agent, Harry Iliff, an attendant on the flight, was contributorily negligent in failing to notify the crew of the aircraft of the restlessness and panting of the hogs.

22. The conduct of Illinois Produce by its agents in causing the hogs to be overcrowded for shipment and in failing to notify the aircraft crew of the hogs' condition constituted negligence but the acts were not willful and wanton.

23. The value of each hog insured is the amount of the Reliance policy $120,000.00, divided by 527 hogs, or $227.70398 per hog. Illinois Produce has sought to recover for the loss of 104 hogs, which loss would amount to $23,681.21. The court finds the value of the 80 hogs which died on the aircraft and which were covered by the policy to be $18,216.32. The other 24 hogs died after removal when coverage was terminated.

24. Kriegsman filed a motion to dismiss the third-party complaint on July 3, 1974 and on July 31, 1974 it filed a motion to strike the amended third party complaint. The court read and considered the memoranda of the respective parties in support thereof and in opposition thereto. In an order of October 21, 1974, the court found that there were properly alleged issues of fact in controversy between Reliance and third-party defendant Kriegsman and that said motions should be denied and they were denied.

Trial of this cause began on October 29, 1974. During the trial, Reliance produced no facts to support its allegations against Kriegsman, except the fact that two of the hogs were dead upon arrival in Chicago, which was a normal and expected loss for such a large shipment of hogs. On October 31, 1974 after plaintiff presented its case and the evidence was heard and concluded for Reliance and Flying Tiger, and before rebuttal, Reliance moved to dismiss third-party defendant Kriegsman and said motion was granted. Thereafter Kriegsman filed post-trial petitions herein, asking the court to order taxing of its costs, expenses and reasonable attorney's fees and also for a finding of contempt against Reliance and its attorney.

The court finds there were issues of fact in controversy between Reliance and Kriegsman prior to October 21, 1974. Upon trial Reliance did not produce facts to support its allegations, as aforesaid; and if Reliance had not made a motion to dismiss Kriegsman from the action, the court on its own motion would have done so. However, the court finds no basis for the petitions of Kriegsman that the court hold Reliance and its attorney in contempt. Kriegsman is entitled to have judgment for its costs and a sum for reasonable attorney's fees expended after Reliance well knew, after October 21, 1974, that it did not have evidence to support its charges and that it would ultimately be compelled to move to dismiss Kriegsman or have a judgment entered against it. The court is reserving jurisdiction to hear evidence for the purpose of fixing the amount of the attorney's fees due Kriegsman.

## Conclusions of Law

1. This court has jurisdiction of the subject matter and the parties hereto.

2. Illinois Produce has failed to prove the material elements of a breach of contract by Flying Tiger.

3. Third-party plaintiff Reliance, as subrogee of the rights of Illinois Produce, has no greater rights than plaintiff Illinois Produce and can enforce only such rights as Illinois Produce could enforce. McCormick v. Zander Reum Company, 25 Ill.2d 241, 184 N.E.2d 882 (1962).

4. The rights and liabilities of parties to a contract involving interstate and international air carriers are governed by federal law and local, state or common law is preempted by federal statutory scheme. Vogelsang v. Delta Air Lines, 371 U.S. 826, 83 S.Ct. 46, 9 L.Ed.2d 65 (1962).

5. This court takes judicial notice of Cargo Rules Tariff No. CR–2 governing the carriage of cargo applicable between points in the United States and points in Asia as having the full force and effect of law as provided by 49 U.S.C. § 1373. Plaintiff Illinois Produce is barred from recovery if found to be contributorily negligent by virtue of Cargo Rules Tariff No. CR–2, Rule 16, and Illinois Produce has been found contributorily negligent. Said Rule 16 provides, in part:

"[A] Carrier is not liable to the shipper or the consignee for any damage, delay or loss of whatsoever nature [except death or personal injury hereinafter collectively referred to as "damage"] arising out of or in connection with the carriage of the shipment or other services performed by Carrier incidental thereto, unless such damage is proved to have been caused by the negligence or wilful fault of Carrier, and *there has been no contributory negligence of the shipper, consignee or other claimant*." [Emphasis supplied]

6. Neither plaintiff Illinois Produce nor third-party plaintiff Reliance has met its burden of proof regarding negligence of the carrier inasmuch as no negligence has been proven on the part of defendant Flying Tiger. Illinois Produce and Reliance should take nothing by their actions and the actions against Flying Tiger should be dismissed on the merits. Flying Tiger should recover from Reliance its costs of action.

7. Illinois Produce has proved a loss within the coverage afforded by the policy it purchased from Reliance. The clause, appearing on the first page of the policy, beginning "Against all risks of physical loss or damage to the property from any external cause whatsoever . . .," is controlling and the endorsement, relating to "risks of direct physical loss or damage to the transporting conveyance," does not prevail over all the terms and conditions of the policy and does not extricate defendant from liability. The purpose of an insurance contract is indemnity and there should be a liberal construction of insurance contracts, uncertainty should be resolved in favor of the insured, (See, Scott v. Inter-Insurance Exchange of Chicago Motor Club, 352 Ill. 572, 186 N.E. 176 (1933); Blume v. Pittsburgh Life & Trust Co., 183 Ill. App. 295, aff'd, 263 Ill. 160, 104 N.E. 1031 (1913); Lenkutis v. New York Life Ins. Co., 301 Ill.App. 358, 23 N.E.2d 580; 374 Ill. 136, 28 N.E.2d 86 (1939)) against Reliance but not against Flying Tiger and Illinois Produce is not entitled to attorney's fees against Reliance for there was here a genuine dispute as to the amount of the loss and therefore the action of Reliance was not vexatious. Dickson v. Great American Casualty Co., 269 Ill.App. 532 (1933); Convery v. Brotherhood of Railroad Trainmen, 190 Ill.App. 479 (1914); Hill v. Standard Mutual Casualty Co., 7 Cir., 110 F.2d 1001 (1940).

8. Wilful misconduct by an insured that causes or contributes to a loss is a valid defense for an insurer but negligence is not and the court has found in its findings that the conduct of Illinois Produce, as to the overcrowding of the hogs and failure to notify the

crew of their condition, constituted negligence but was not wilful.

9. Illinois Produce is entitled to recover from Reliance the sum of $18,216.-32 for the loss of the 80 hogs that died on the aircraft during the period of the insurance coverage.

10. Reliance is not liable for the loss of the 24 hogs which died as a result of the icing by shipper or agents of shipper on removal from the Flying Tiger aircraft at Saigon, when coverage was terminated.

11. Although the Court of Appeals for the Seventh Circuit in Sager Glove v. Aetna, 317 F.2d 439, has placed upon the plaintiff the burden for segregating the losses from which a plaintiff could recover from those which it could not recover, the court has found in this case that there was sufficient evidence adduced to arrive at a segregated figure, even though by Kriegsman's testimony.

12. Illinois Produce is entitled to its costs of action against Reliance but not against Flying Tiger and Illinois Produce is not entitled to attorney's fees against Reliance for there was here a genuine dispute as to the amount of the loss and therefore the action of Reliance was not vexatious.

13. Kriegsman is entitled to recover from Reliance its costs of action and a sum for reasonable attorney's fees for services rendered to Kriegsman after October 21, 1974.

14. Judgment is being entered simultaneously herewith providing that the actions brought by both Illinois Produce and Reliance against Flying Tiger be dismissed; that Flying Tiger recover from Reliance its costs of action; that Illiniois Produce recover from Reliance the sum of $18,216.32 for the loss of 80 hogs, together with its costs of action against Reliance; and that Kriegsman recover from Reliance its costs of action and reasonable attorney's fees for services rendered to Kriegsman after October 21, 1974, which fees are to be fixed upon a hearing.