**INSURANCE COMPANY OF NORTH AMERICA, Appellant,**

v.

**ASARCO, INC., Appellee.**

**No. 1246.**

Court of Civil Appeals of Texas, Corpus Christi.

Feb. 16, 1978.

Rehearing Denied March 16, 1978.

F. Van Huseman, Maddin, White & Brin, Inc., Corpus Christi, for appellant.

Robert J. Patterson, Keys, Russell, Seaman & Mansaker, Corpus Christi, for appellee.

## OPINION

BISSETT, Justice.

This is a suit for declaratory judgment. Suit was brought by ASARCO, INC., (ASARCO) against Insurance Company of North America (INA) to ascertain the respective parties' rights under a general liability insurance policy and to determine whether or not INA had a duty to defend ASARCO in another action. Following a jury trial, judgment was rendered which decreed that INA is contractually obligated to provide a defense for ASARCO in the said action. INA has appealed. We affirm.

INA issued a policy of insurance to ASARCO which covered the period January 1, 1973 to January 1, 1974. Under the policy the insurer had a duty (among others) to defend the insured against any suit for damages on account of bodily injury or property damage. The policy was in force and effect at all times material to this suit. The policy, under the section entitled CONDITIONS, contained the following provision:

"(4) Insured's Duties in the Event of Occurrence, Claim or Injury

(a) 'In the event of an occurrence, written notice containing particulars sufficient to identify the Insured and also reasonably obtainable information with respect to the time, place and circumstances thereof, and the names and addresses of the injured and of available witnesses, shall be given by or for the Insured to the Company or any of its authorized agents as soon as practicable . . ..' "

On or about October 17 or 18, 1973, there was an alleged incident at ASARCO's plant in Corpus Christi, Texas, wherein one William L. Priebe claimed to have been exposed to chemical fumes that caused injuries which allegedly resulted in total and permanent disability to him. The alleged incident was made the basis of a law suit filed by William L. Priebe against ASARCO on October 11, 1974, wherein Priebe sought to recover damages for his alleged injuries as a result of ASARCO's alleged negligence. INA was promptly notified of the filing of the suit which was the first notice which it had received of the occurrence upon which the Priebe suit was founded. On or about November 7, 1974, INA, through its retained attorney, Mr. Guy D. Allison, undertook the defense of the Priebe suit by filing an answer therein.

On January 30, 1975, INA informed AS-ARCO that it would no longer defend AS-ARCO in said suit for the reason "that the claim was not reported for more than a year after the date of the event". Whereupon, ASARCO filed suit against INA to compel the latter to defend the Priebe suit.

ASARCO pled: 1) reasonable notice of the occurrence of the event which led to the filing of the Priebe suit was given; 2) INA's conduct constituted a waiver of the notice provision of the policy. INA filed a general denial and further pled the failure of ASARCO to notify it of the occurrence of the October 18, 1973 event within a reasonable time thereafter excused its defense of the Priebe suit.

The jury found: 1) ASARCO gave notice to INA of the alleged occurrence of October 18, 1973 event "as soon as practicable"; 2) INA did not waive the notice provision in the policy; 3) INA led ASARCO to believe that it (INA) "would not insist upon compliance with the notice provisions of the insurance policy in question"; 4) ASARCO relied on INA's conduct to the extent that it believed that INA would defend the Priebe suit "without insisting on compliance with the notice provisions of the insurance policy in question."

INA, in point 1, contends that there is "no evidence" to support the jury finding that ASARCO gave INA notice of the "Priebe incident as soon as practicable". In point 3, it is asserted that the trial court erred in granting judgment in favor of AS-ARCO "since ASARCO failed, as a matter of law, to give INA notice of the Priebe incident as soon as practicable." INA claims in point 2 that the evidence is factually insufficient to support the jury finding of timely notice of the "Priebe incident".

On November 5, 1973, Dr. Roger S. Johnson, ASARCO's plant physician, wrote a letter [1] to Roy Hudson, Personnel Director and Safety Director for ASARCO. The

---

1. "I am writing this letter to you today to keep you informed of a problem which I believe might represent a medical-legal problem. . .

I received a telephone call from Dr. Eugene Brown of Corpus Christi on Friday, November 2, 1973 informing me that he was caring for a patient by the name of William Priebe, an employee of South Texas Masonry. According to information given to Dr. Brown by Mr. Priebe, this gentleman was working for the above mentioned establishment on October 17, 1973 on the plant premises of the local Corpus Christi American Smelting and Refining Company plant.
He related to Dr. Brown that he was working adjacent to an oven which was burning off some zinc products. Apparently he was doing some brick work. Reportedly, some 'green gas' escaped and several (I believe about six) of his fellow workers including himself; noticed immediately effects due to the inhalation of this gas. Apparently all of the workers involved recovered without any difficulty except Mr. Priebe.

\* \* \* \* \* \*

"In Dr. Brown's conversation with me, he described his patient as showing evidence of hysteria and uncooperativeness. The doctor attempted to carry out pulmonary function studies, and I am told these gave a rough indication of what we call chronic obstructive disease although the pulmonary function studies were interpreted to be incomplete because of the patient's refusal to cooperate fully. Dr. Brown related to me the patient was an extremely heavy smoker, which might account for any possible pathology in the lungs. His chest x-rays, incidently, were interpreted to be normal.

\* \* \* \* \* \*

" . . . Dr. Brown feels this man most probably is an hysterical malingering type of individual . . . ."

pertinent parts are set out in the footnote. Mr. Hudson, upon receipt of the letter, notified Mr. C. B. White, ASARCO Plant Manager of the Corpus Christi plant, of the contents thereof. The letter was then placed in a folder labeled "William Priebe", which was put in the general information file. INA did not learn of the existence of the letter until after it had already filed an answer on behalf of ASARCO in the Priebe suit.

On November 12, 1974, INA sent Mr. Allison a letter indicating that the investigation of the Priebe suit had been assigned to Lindsay and Newsom, Corpus Christi, Texas. In that letter, INA indicated that in addition to investigating the Priebe suit, Lindsay and Newsom were also instructed to investigate coverage questions under the policy, particularly late reporting. On November 18, 1974, Mr. O. B. Roquemore, an investigator for Lindsay and Newsom, visited ASARCO's plant at Corpus Christi, Texas. He contacted Hudson and asked to see the information which ASARCO had "in the file on William Priebe." Whereupon, Hudson showed him the file which contained the letter from Dr. Johnson and nothing more. It is undisputed that Roquemore did not ask Hudson why a copy of the letter was not sent to INA. Roquemore then toured ASARCO's plant and took several photographs of the plant area. He was given a copy of Dr. Johnson's letter.

A "reservation of rights" letter was issued to ASARCO on January 17, 1975. It was signed by Roquemore. ASARCO was therein notified of the possibility of a breach of policy conditions, namely, "Delayed Reporting", and was advised that INA "reserves the right" at any time to withdraw from the defense of the Priebe suit and to disclaim liability under the policy. The letter was ASARCO's first notice that INA was checking into the matter of late reporting. On January 30, 1975, INA informed ASARCO that it would no longer defend against the action brought by Priebe.

Roquemore knew that he was "supposed to investigate late reporting" when he went out to ASARCO's plant on November 18, 1974. However, he further testified that he did not disclose to Hudson that he had been asked by INA to investigate late reporting in connection with his investigation of the facts surrounding the alleged occurrence; nor did he inform Hudson that there might be "a coverage conflict with regard to late reporting".

Hudson, ASARCO's Personnel and Safety Director, as aforesaid, first became aware of the fact that Priebe was making a claim against ASARCO on November 18, 1974, when Roquemore told him of the claim. He said:

"I received a phone call from Mr. Roquemore telling me that he was representing INA and ASARCO and that . . . on the Priebe case, and he wished to come out and talk to me about it."

Hudson testified both in person and by deposition. With respect to the testimony elicited from the witness chair, he, in summary, told the jury: 1) Roquemore did not tell him that he was at the plant to investigate the late reporting of the alleged Priebe occurrence; 2) he did not have any reason to suspect that Roquemore "was working against ASARCO"; 3) he willingly produced the Priebe file for Roquemore's inspection and, at Roquemore's request, furnished him with a copy of Dr. Johnson's letter. The following portions of Hudson's deposition were read to the jury:

"Q Mr. Hudson, you answered some questions with regard to what you showed Mr. Roquemore, did you not?

A Yes.

Q Do you recall that you were asked what you showed Mr. Roquemore and whether you had anything to hide from Mr. Roquemore regardless of the conditions, is that correct?

A Yes.

Q Did you base all your answers to those questions on the assumption that Mr. Roquemore was representing ASARCO's interest in examining your files?

A Yes.

Q Would you have given any different answers if you had known Mr. Roquemore would have been representing another party?

A Yes, sir.

Q You would have made your file fully available to any other party?

A No.

\* \* \* \* \* \*

"Q Did Mr. Roquemore at any time say he was representing ASARCO in this matter?

A I don't recall."

It is undisputed that on October 17, or 18, 1973, Priebe was working on a furnace in ASARCO's Corpus Christi plant. It is further undisputed that on that day Priebe was not an employee of ASARCO but was employed by a third party and was under the supervision of the third party. Although several of ASARCO's employees were working in the same area where Priebe was working, none of ASARCO's employees reported to ASARCO's management any accidents, incidents or unusual occurrences on that day. In particular, Mr. James W. Murphy, an employee of ASARCO and the supervisor of the area in which Priebe was working, who was called by INA as its own witness and not as a witness under the "Adverse Witness Rule", testified that he was personally familiar with the area of the plant in which Priebe alleged he was injured and that as far as he knew, no accident, such as that alleged by Priebe, occurred in that area on October 17 or 18, 1973. He specifically testified:

"Q Would you be in a position to know whether any such accident occurred in the section where you were supervising?

A Yes, I would have known.

\* \* \* \* \* \*

"Q Based on your experience at ASARCO and based on your engineering background, are you of the opinion that this sort of incident which Mr. Priebe alleges could have resulted from a routine, ordinary course of business sort of situation?

A No way."

Murphy's testimony was not contradicted. Hudson also testified that none of the ASARCO employees who were working in the area where Priebe claims he sustained injury reported any accidents or occurrences on the day in question.

■ The phrase "as soon as practicable", as used in the notice provision of general liability policies requiring the insured to give the insurer notice of an accident or occurrence as soon as practicable, means notice within a reasonable time, and what is a reasonable time depends upon the facts and circumstances in each particular case. *Employers Casualty Company v. Scott Electric Company*, 513 S.W.2d 642 (Tex.Civ.App. —Corpus Christi 1974, no writ).

■ The language used in the "notice" provision of the policy presupposes that an accident or occurrence takes place and that the insured is required to notify the insurer "as soon as practicable" of the occurrence. It is conclusively established by the evidence that Priebe was the employee of a third party and was not under the control or supervision of ASARCO on the day of the alleged occurrence. It is further conclusively established that no such occurrence was reported by Priebe or by any of ASARCO's employees to either Hudson, Murphy or anyone else in ASARCO's employ. The jury could reasonably infer that although ASARCO's employees were working in the area where Priebe was working, none of them were aware of any such occurrence as that claimed by Priebe, and that Dr. Brown, Priebe's doctor, had some doubt as to whether such an occurrence actually took place. The only inkling of such an occurrence stems from what Dr. Brown told Dr. Johnson what Priebe told him. None of the "several workers" who were working alongside of Priebe reported the escape of "green gas" that produced any effect on them due to inhalation of the gas. The use of the word "occurrence" in the notice provision of the policy must relate only to the happening of an event of some importance which, in all probability, could and probably would, cause injury.

The provision cannot be held to encompass mere possibilities. The letter illustrates the lack of credibility with which Dr. Brown viewed Priebe's claim. We do not believe the statements made by a person who exhibited "evidence of hysteria" to his examining doctor of such magnitude that caused the doctor to conclude that he was "an hysterical malingering type of individual", even though such statements were promptly reported by the examining doctor to the insured, are sufficient to put the insured on notice of the occurrence of an event which, without more, should have been reported to the insurer. The jury, as the trier of facts, found that ASARCO's actions, under all the circumstances present, were in compliance with the notice provision of the policy. We hold that this was evidence of probative force to sustain the jury finding that ASARCO gave INA notice of the "Priebe incident as soon as practicable." The evidence is factually sufficient to support the finding. ASARCO did not fail, as a matter of law to give INA notice of the occurrence "as soon as practicable". INA's points 1, 2 and 3 are overruled.

After completing his investigation, Roquemore prepared a report and forwarded copies thereof to Allison and INA. Allison acknowledged receipt of the report by letter dated November 26, 1974, the pertinent part of which read:

"I don't see any harm that has resulted from the delay in reporting but the 'reservation of rights' would be up to the insurance carrier and I notice a copy of your letter to me went to the San Antonio office. It would be my recommendation that we accept the defense of the matter without reservation, for public relations effect if nothing else, but that is up to the carrier.

The letter from Dr. Johnson is very interesting. Roger makes a good witness and apparently we have another good witness built-in in the man's treating physician."

The letter was introduced in evidence over INA's objection. The action by the trial court is challenged in point 4 on the grounds 1) that the letter did not constitute an admission by an agent; 2) that what Allison thought about the matter did not tend to prove or disprove any issue which the jury was to decide; and 3) the letter did not show a change in INA's position.

The letter illustrates that both Allison and Roquemore were aware of the investigation concerning a possible coverage conflict. Apparently, there had been some discussion between them concerning the advisability of sending a "reservation of rights" letter to ASARCO. As already noted, the "reservation of rights" letter was so issued on January 17, 1974. The Allison letter was admissable to show the knowledge of a possible coverage conflict at an early date in INA's investigation of "delayed reporting".

Even assuming that the Allison letter should not have been admitted into evidence, no harm resulted. The jury, in its answer to Special Issue No. 1, found that ASARCO gave notice to INA of the alleged occurrence "as soon as practicable". Special Issue No. 2, which inquired if INA was prejudiced by the failure of ASARCO to give notice of the alleged occurrence "as soon as practicable", was to be answered only if the jury answered "it did not" to the question submitted in Special Issue No. 1. Since the jury answered "it did" to Special Issue No. 1, it did not reach Special Issue No. 2. The erroneous admission of evidence will not require a reversal unless the record as a whole affords a substantial basis for the reasonable belief that such evidence may well have caused the rendition of an improper judgment. Rule 434, T.R.C.P; *Walker v. Texas Employers' Insurance Association,* 155 Tex. 617, 291 S.W.2d 298 (1956). We hold that the admission of the Allison letter into evidence, if error, did not probably cause the rendition of an improper judgment. Point 4 is overruled.

INA, in its point 5 (its final point) concludes that the "trial court erred in failing to submit an issue inquiring as to whether or not ASARCO's reliance on representations of INA induced it to change its position for the worse." In view of our overruling INA's points 1, 2, 3 and 4, it is not

necessary that we consider point 5. And, for the same reason, we do not reach AS-ARCO's cross points.

The judgment of the trial court is AFFIRMED.