**John DUZICH, Appellant,**

v.

**MARINE OFFICE OF AMERICA CORP., Fidelity & Casualty Company of New York and Coastal Bend Production Credit Association, Jointly and Severally, Appellees.**

No. 13–96–463–CV.

Court of Appeals of Texas, Corpus Christi.

Oct. 8, 1998.

Rehearing Overruled Dec. 30, 1998.

Gail D. C. Dorn, William H. Berry, Jr., Corpus Christi, for Appellant.

Gregory T. Perkes, Lee Casstevens, David Atnip, Wood, Burney, Cohn & Viles, Gary Norton, Frederick J. McCutchon, Wood, Boykin & Wolter, Corpus Christi, for Appellee.

Before DORSEY, YAÑEZ and RODRIGUEZ, JJ.

## OPINION

YANEZ, Judge.

This appeal stems from a fisherman's ill-fated lawsuit against his insurers, Marine Office of America Corp. (MOAC), Fidelity & Casualty Co. (Fidelity), and the mortgagees of his vessel, Coastal Plains Production Credit Association (Coastal Plains),[1] and Farm Credit Bank (FCB).

John Duzich claims his insurers wrongfully failed to defend or indemnify him in collection proceedings that flowed from a judgment rendered against him in a third party action that was otherwise covered by his insurance policy. Duzich ultimately settled that debt, together with at least part of those of his mortgagee, in federal court. He then brought suit against his insurers on multiple theories.[2] Also, after receiving a subsequent demand letter from his mortgagee, he sought a judicial declaration that any debts he owed on the vessel were foreclosed by agreed judgment in a prior federal court proceeding. After the mortgagees filed a counterclaim for the deficiency, Duzich added several affirmative claims against them, including usury, unfair debt collection practices, violations of the DTPA, and breach of contract. All parties moved for summary judgment. Both the insurers and the mortgagees obtained summary judgment in their favor, and the court ordered Duzich to pay $289,715.23 on the note, plus costs and attorney's fees. By nineteen points of error, he appeals the judgment. We affirm in part, reverse and render in part, and reverse and remand in part.

---

1. Duzich's original promissory note was issued to Coastal Bend Production Credit Association (Coastal Bend), which then changed its name to Coastal Plains Production Credit Association (Coastal Plains). During litigation, Coastal Plains sold the note to FCB.

2. Duzich sued them for bad faith, breach of contract, and violations of the Texas Deceptive Trade Practices Act and the insurance code.

## FACTUAL HISTORY

In 1980, Duzich owned and operated a fishing vessel, the Miss Suni Suzanne. Duzich and the vessel were insured under two policies issued and adjusted by MOAC, which named Fidelity as the insurer: one was a hull policy protecting the vessel, the other a personal injury policy protecting against suits from third parties. During an outing off the coast of Virginia and North Carolina on December 1, 1980, a seaman working on the vessel, Ronald Baham, sustained a minor injury. At Baham's request, Duzich brought the vessel to shore and escorted Baham to a hospital for treatment. From the hospital, he telephoned Jim Cox, of Whitney–Vaky Insurance of the incident, as he had on prior occasions. Duzich had purchased the policy from Whitney–Vaky, and he believed that Cox was Fidelity's local agent. Cox instructed Duzich to forward any papers in any action that might commence thereafter to him.

Duzich heard nothing else about the matter until his boat was arrested while in port on January 8, 1982. He was informed at that time that Baham had obtained a default judgment against him and the vessel on November 8, 1981, in a federal court in Virginia. A U.S. Marshal's bond was set, but Duzich was unable to tender that amount. Instead, Duzich notified Cox of the arrest by telephone, and wrote to Cox on January 19, 1982, demanding a defense or settlement of the forfeiture proceedings by January 24, 1982.

Apparently, Cox forwarded the letter to James Buchanan, counsel for MOAC, because Duzich received a letter dated January 21 from Buchanan informing him that his notice of the suit was untimely, and that MOAC would probably not undertake any defense for that reason, but that it could not determine the issue by January 22[sic], as requested. On January 25, Buchanan notified Duzich's attorney that Duzich had an indemnification policy, rather than a general liability policy that required a defense. He encouraged Duzich to settle the matter in accordance with his duties to mitigate damages, and said that after any settlement, Duzich could again present his claim, at which point MOAC would make a coverage determination. Three days later, Buchanan sent another letter, indicating MOAC had decided to deny coverage "based upon the late reporting of the claim" after default, but again suggested that his claim could be resubmitted if Duzich was successful in having the Virginia judgment set aside. By separate letter of that same date, Buchanan declined Duzich's request that it pay a bond to release the vessel from the marshal's custody.

During this time, Duzich was unable to earn his livelihood, and he fell behind on his boat mortgage payments. Coastal Bend, which owned the note at the time, accelerated his debt and demanded full payment. In July 1982, it brought a separate action in the United States District Court for the Southern District of Texas against Duzich *in personam*, and against the boat *in rem*, seeking to recover the balance due on the note.[3] This cause was soon consolidated with Baham's federal action.

On July 8, 1982, Duzich's attorney informed Buchanan by letter that the federal court in Corpus Christi was to conduct a hearing addressing the validity of the Virginia judgment, and he asked whether MOAC had determined if it would defend Duzich if he successfully attacked the Virginia judgment. Apparently neither Duzich nor his attorney ever heard from MOAC on this issue. On October 4, 1982, Duzich's attorney notified Buchanan by letter that the federal district court in Texas had refused to follow the Virginia judgment, and requested that MOAC pay Duzich's attorney's fees.

Left without coverage, Duzich was forced to settle the Baham and Coastal actions to limit his exposure.[4] On June 11, 1984, an agreed judgment in the consolidated federal actions was entered. The judgment recited

---

3. Coastal's action on the debt was governed by the federal Ship Mortgage Act, which vested exclusive jurisdiction for *in rem* forfeitures in federal court, along with concurrent jurisdiction on any *in personam* action.

4. The order of dismissal has some mother hubbard language disposing of all claims, the meaning of which is hotly disputed between Duzich and both Coastal and FCB.

the following facts: The Miss Suni Suzanne was sold on November 12, 1982, at public auction. Of the total of $29,500 that was paid into the registry of the court, the U.S. Marshal was paid $15,619.85 (including the cost of dockage), leaving a balance of $13,880.15: $2,500 to Coastal Bend, $7,250 to Baham's attorneys, and $4,130.15 to Baham. It was also agreed that Duzich would be given credit of $75,000 on his promissory note for the Miss Suni Suzanne, as this was the bid price of Coastal Bend for the purchase of the boat. The dismissal order indicated "all stipulations and undertakings are canceled and that the principals and sureties thereon are discharged of record."

### Duzich's Lawsuit

On June 10, 1985, Duzich filed his lawsuit against MOAC, Fidelity, and Whitney–Vaky.[5] At the heart of the claims was that MOAC and Fidelity refused to defend Duzich against a judgment erroneously entered against him in Virginia throughout the course of the collection proceedings in Texas. Essentially, Duzich maintains he notified MOAC as soon as he learned of the default judgment because he was not aware of any claims prior to that time. Despite his timely notice, MOAC declined to assist his efforts to have the default judgment set aside, post bond necessary to release his boat from the U.S. Marshal's custody, or defend him against other collections efforts that followed the default judgment. MOAC's argument to the trial court was that it was never required to provide a defense for Duzich because he only had an indemnity policy (distinct from a general liability policy), and whatever duties it might otherwise have had under the policy were relieved by Duzich's failure to provide timely notice of the accident/claim filed against him. It also argued that a specific policy exclusion exempted forfeitures from coverage.

In addition to his claims against MOAC and Fidelity, Duzich also sought declaratory relief against Coastal, then FCB (after FCB purchased the note), that he was no longer liable on the mortgage note which those entities held on his boat. This action was most likely prompted by a demand letter Coastal sent on June 5, 1985, requesting payment of an alleged deficiency of $173,448.26 on the note. After Coastal had filed its *in rem* action against the boat, and its case was consolidated with Baham's, the boat was eventually sold at a foreclosure sale for $75,-000 (purchased by Coastal).

By this suit, Duzich sought declaration that he was not liable on the note, and that any attempt to collect on the note would be barred by *res judicata* and collateral estoppel. In January 1989, Coastal Bend filed a counterclaim alleging Duzich still owed more than $213,300 on the note, and that the order of dismissal did not relieve him of any personal liability. Nearly four years later, in January 1993, Duzich added claims against Coastal of intentional infliction of emotional distress, negligence and gross negligence, usury, and violations of federal lending laws.

All claims were finally adjudicated at three different hearings in 1995 and 1996. The trial court granted a partial summary judgment in favor of FCB and Coastal on September 18, 1995, disposing of "all claims asserted by Plaintiffs and granting FCB of Texas affirmative relief." All that remained in these cases were the fact issues regarding attorney's fees owed to FCB. The court granted summary judgment in favor of MOAC and Fidelity on January 31, 1996. After hearing FCB's claim for attorneys' fees, it signed a final judgment on May 28, 1996, awarding FCB $289,715.28, together with interest in the amount of $33.94 per day from July 15, 1995 to September 18, 1995, plus interest on the total amount accruing at ten percent until finally paid. It also ordered Duzich to pay $15,000 for FCB's attorneys' fees, plus contingent fees in the event of an appeal.

### POINTS ON APPEAL

Appellant brings nineteen points of error on appeal. Eleven points attack the court's ruling with respect to his claims against

---

5. Although originally named as a defendant, Whitney–Vaky Insurance was later dropped as a defendant.

MOAC and Fidelity. He contends that he should have had judgment rendered in his favor, or in the alternative, he argues that fact issues on each of his claims preclude summary judgment. With respect to FCB, he argues in eight points that the court erred because he was no longer personally liable on the note, based on principals of *res judicata* and collateral estoppel, that limitations barred Coastal Bend and FCB's claims, and that Duzich was entitled to affirmative relief from them. For ease of discussion, we will discuss the points of error regarding Duzich's claims against MOAC and Fidelity together, then discuss his points regarding his claims against FCB and Coastal Bend together.

## STANDARD OF REVIEW

■ The standard of review for summary judgments is well-established:

> 1. The movant for summary judgment has the burden of showing there is no genuine issue of material fact and that it is entitled to judgment as a matter of law;
>
> 2. In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true; and
>
> 3. Every reasonable inference must be indulged in favor of the non-movant and any doubts resolved in its favor.

*Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985). When both parties file competing motions for summary judgment and one is granted and the other denied, the reviewing court will determine all issues presented, including the order denying the losing party's motion. *Jones v. Strauss*, 745 S.W.2d 898, 900 (Tex.1988). Each party is required to carry its own burden as the movant and, in response to the other party's motion, as the nonmovant. *James v. Hitchcock Indep. Sch. Dist.*, 742 S.W.2d 701, 703 (Tex.App.—Houston [1st Dist.] 1987, writ denied). Because both parties moved for summary judgment, we must review the summary judgment proof presented by both sides and determine all questions presented. *See Commissioners Ct. of Titus County v. Agan*, 940 S.W.2d 77, 81 (Tex.1997). The court's order does not specify the grounds upon which summary judgment was granted, so we will affirm the judgment if any theories advanced in the motions are meritorious. *State Farm Fire & Cas. Co. v. S.S.*, 858 S.W.2d 374, 380 (Tex.1993); *Carr v. Brasher*, 776 S.W.2d 567, 569 (Tex.1989). The proper scope for a trial court's review of evidence for a summary judgment encompasses all evidence on file at the time of the hearing or filed after the hearing and before judgment with the permission of the court. TEX.R. CIV. P. 166a(c); *Gandara v. Novasad*, 752 S.W.2d 740, 743 (Tex.App.—Corpus Christi 1988, no writ).

■ Duzich's theories for recovery had several overlapping elements. To recover for breach of contract, he needed to prove: (1) the existence of a contract, (2) compliance with its terms, and (3) breach of the contract. *Bailey, Vaught, Robertson and Co. v. Remington Invs., Inc.*, 888 S.W.2d 860, 865 (Tex.App.—Dallas 1994, no writ). An insurer breaches its common law duty of good faith and fair dealing by denying a claim when the insurer's liability has become reasonably clear. *State Farm Fire & Cas. Co. v. Simmons*, 963 S.W.2d 42, 44 (Tex.1998); *Universe Life Ins. Co. v. Giles*, 950 S.W.2d 48, 56 (Tex.1997). The plaintiff in a bad faith case must therefore prove that "the insurer was actually aware that its action would probably result in extraordinary harm not ordinarily associated with breach of contract or bad faith denial of a claim—such as death, grievous physical injury, or financial ruin." *Giles*, 950 S.W.2d at 54. An insured may bring a private action based on unfair settlement practices against its insurer under article 21.21 of the Texas Insurance Code, which enumerates unfair practices under the Code and the consequences of those acts. TEX. INS.CODE ANN. art. 21.21 § 16 (Vernon 1981 & Supp.1998); *Vail v. Mutual Ins. Co.*, 754 S.W.2d 129, 134 (Tex.1988); *Rocor Int'l, Inc. v. National Union Fire Ins. Co.*, 966 S.W.2d 559, 1998 WL 9505,*4 (Tex.App.—San Antonio 1998, no pet. h.).

## POINTS OF ERROR RELATED TO MOAC AND FIDELITY

Duzich maintains in point of error one that the trial court erred in granting summary

judgment for MOAC and Fidelity because they did not submit proper summary judgment evidence. Specifically, he contends they relied on conclusory factual assertions, as well as on pleadings, neither of which are competent summary judgment evidence. *See* Tex.R. Civ. P. 166a. By his second point, he contends that his alleged failure to comply with the warranty provisions of the policy is not a valid defense for the insurers' failure to fulfill their obligations under the policy.[6] By point three, Duzich contends the court should have found, as a matter of law that (1) MOAC and Fidelity had a duty to pay the $8,700 default judgment, (2) MOAC had a duty to defend Duzich, and (3) MOAC had a duty to post bond. In the alternative, Duzich maintains that fact issues exist on each of these grounds which preclude summary judgment. He also contends the court should have found as a matter of law that MOAC and Fidelity had a duty to pay the $29,500 Texas judgment plus Duzich's attorney's fees. By point eight, he contends facts issues exist regarding his Insurance Code, DTPA, and tort claims, based on the insurers' failure to pay the default judgment, and their "limited indemnity" assertions, and their refusal to assist in Duzich's defense in the suits against him and his vessel.

We begin by addressing whether Baham's injury fell within the scope of coverage. Duzich had two policies: the first, described as hull policy no. HH 04 37 74, generally protected against damages caused to his vessel from the perils of sea, while the second, described as personal injury policy no. HH 04 37 75, protected against liability for injuries to persons or property caused by his vessel.[7] The personal injury policy provided that the insurer would pay "such sums as the assured [Duzich] becomes legally liable to pay on account of injury to any person," together with "costs and expenses, incurred with its approval, of investing and/or defending any claim or suit against the assured arising out of a liability or an alleged avail-

ability of the assured covered by the policy." Given that Baham suffered his injury on the vessel while out at sea, it is clear that his claims fell within the scope of coverage of the personal injury policy.[8]

■ We next address MOAC and Fidelity's principal defense, that Duzich failed to comply with a condition precedent to its liability by failing to satisfy his warranty to promptly notify it of Baham's claim. The personal injury policy contained the following warranty provision:

> Warranted that in the event of any occurrence which *could* result in a claim under this policy the assured will notify this Company *upon receiving notice thereof* and forward to this Company *as soon as practical* all communications, processes, pleadings or other legal papers or documents related to such occurrence. (emphasis ours).

MOAC and Fidelity argued that, because Duzich admittedly did not notify either of them of the Baham claim until after a default judgment had already been entered against him, they were excused from any liability for failing to represent him upon such untimely notification. As authority, they cite several cases, wherein courts have construed notice by an insured to an insurer of a claim after entry of default judgment to be untimely as a matter of law. Upon close review of those cases, the policy, and the facts of this case, we believe fact issues exist with respect to Duzich's compliance with the warranty provision, and consequently, as to the viability of the "noncompliance with warranty" defense.

The policy does not require that an actual claim be filed before the insured is required to give notice. Rather, it requires notice soon after an event which could give rise to a claim. It follows, then, that upon his notice of the actual occurrence (injury to Baham), Duzich should have notified MOAC and Fi-

---

6. MOAC and Fidelity argued to the trial court that Duzich's failure to notify them of the Baham injury promptly excused any liability they may have otherwise had under the policy.

7. The policies are issued by "Fidelity & Casualty Co. of New York," but also bear the emblem

"MOAC" on the letterhead. One of Duzich's DTPA claims was that the insurer intentionally caused confusion as to the source and sponsorship of his policies.

8. The hull policy does not cover Baham's injury.

delity of any occurrence, and forwarded any papers upon receiving them.

■ Duzich offered proof by way of affidavit that he notified Jim Cox, of Whitney–Vaky, about Baham's injury on the date it occurred. Cox said he would handle it. Although the insurers argue Cox was not their agent for receipt of claim notification, they provided no summary judgment proof of this. Counsel for MOAC and Fidelity also represented at oral argument that no such person was named anywhere in the policy. It is true that, generally speaking, an insurance broker is considered the agent of the insured; if the insured reports a claim to the broker, but the broker fails to report it to the insurer, the insured is not relieved of his notice obligations. JOHN ALAN APPLEMAN AND JEAN APPLEMAN, INSURANCE LAW AND PRACTICE § 5089.55 (1981); *Hawkeye–Sec. Ins. Co. v. Davis*, 277 F.2d 765, 768 (8th Cir.1960). However, an insurance company may be estopped to deny that such broker is its own agent when that person has authority to perform various functions on the insurer's behalf. *See, e.g., Kootenai County v. Western Cas. & Sur.*, 113 Idaho 908, 750 P.2d 87 (1988) (agent who (1) took applications, (2) countersigned and delivered policies, (3) collected and remitted premiums, and (4) transmitted claims on behalf of the insurer, was clothed with apparent authority to bind the insurer). Duzich demonstrated that he had previously submitted claims to Cox, and MOAC and Fidelity had processed claims when notified through Cox.

Duzich presented summary judgment evidence by way of affidavit that indicated he had always informed Cox of potential claims, and upon doing so, third party claims were always taken care of from MOAC's and Fidelity's end. There had never been a problem with Duzich's reporting potential claims in this manner, and he had never notified any agent other than Cox or someone at Whitney–Vaky in the past. We conclude there is a fact issue as to whether Cox was clothed with apparent authority to act as MOAC's and Fidelity's agent for receipt of claims. *Contrast Abe's Colony Club, Inc. v. C & W Underwriters, Inc.*, 852 S.W.2d 86, 90 (Tex. App.—Fort Worth 1993, writ denied) (plaintiff presented no evidence of insurer bestowing apparent authority upon selling agent). Therefore, whether Duzich timely notified his insurers is a question of fact.

■ Even if it Cox was not the registered agent for MOAC and Fidelity, a fact issue exists regarding whether Duzich's notice after default judgment, under the circumstances, complied with the policy. Because the resolution of this issue requires us to construe the policy, we will set out the rules of construction. Insurance contracts are governed by the same rules of construction as other contracts, which require the courts to strive to give effect to the written expression of the parties' intent. *State Farm Life Ins. Co. v. Beaston*, 907 S.W.2d 430, 433 (Tex.1995); *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex.1994); *Dickson v. State Farm Lloyds*, 944 S.W.2d 666, 668 (Tex.App.—Corpus Christi 1997, no writ). We construe all parts of the policy together to effectuate this intent. *See American–Amicable Life Ins. Co. v. Lawson*, 419 S.W.2d 823, 826 (Tex.1967).

■ When the language of a policy is susceptible to more than one reasonable construction, it is patently ambiguous, and the courts will apply the construction which favors the insured and permits recovery. *Warrilow v. Norrell*, 791 S.W.2d 515, 524 (Tex.App.—Corpus Christi 1989, writ denied) (citing *Glover v. National Ins. Underwriters*, 545 S.W.2d 755, 761 (Tex.1977)). A term in a policy may not be ambiguous on its face, yet uncertainty may arise when the term is applied to the facts of the case. *Warrilow*, 791 S.W.2d at 524 (citing *Ramsay v. Maryland Am. Gen. Ins. Co.*, 533 S.W.2d 344 (Tex. 1976)). If an insurance policy remains ambiguous despite the rules of interpretation, courts are to construe its language against the insurer in a manner that favors coverage. *Beaston*, 907 S.W.2d at 433; *Ramsay v. Maryland Am. Gen. Ins. Co.*, 533 S.W.2d 344, 349 (Tex.1976); *Dickson*, 944 S.W.2d at 668.

■ It is the general rule that a provision in an insurance policy requiring the insured to immediately forward every demand, notice, summons, or other process of a claim being brought against it, serves as a

condition precedent to an insurer's liability under the policy. *See Ohio Cas. Group v. Risinger*, 960 S.W.2d 708, 710 (Tex.App.—Tyler 1997, writ denied). The purpose of these provisions is to enable the insurer to control the litigation and interpose a defense, and to advise the insurer that the insured is being sued, and that it is expected to timely file an answer. *See Weaver v. Hartford Acc. & Indem. Co.*, 570 S.W.2d 367, 369 (Tex. 1978).

■ The situation in the instant case is different than in others addressed by the supreme court, which concerned ordinary general liability policies that expressly require insurers to both defend and indemnify. As the insurers admit, the policy in this case only required the insurer to indemnify; therefore, the prejudice from untimely notice would arguably be much less severe in the instant case than in others, were the insurers were obliged, but denied the opportunity, to defend the insured. The phrase "as soon as practicable," as used in the notice provision of general liability policies means notice within a reasonable time, and what is a reasonable time depends upon the facts and circumstances in each particular case. *Broussard v. Lumbermens Mut. Cas. Co.*, 582 S.W.2d 261, 262–63 (Tex.Civ.App.—Beaumont 1979, no writ); *Insurance Co. of N. Am. v. Asarco, Inc.*, 562 S.W.2d 557, 561 (Tex.Civ.App.—Corpus Christi 1978, writ ref'd n.r.e.); *Employers Cas. Co. v. Scott Elec. Co.*, 513 S.W.2d 642, 645 (Tex.Civ.App.—Corpus Christi 1974, no writ).

■ If the insurer is prejudiced by the insured's failure to comply with such a provision, then the insurer has no obligation under the policy.[9] *See Liberty Mut. Ins. Co. v. Cruz*, 883 S.W.2d 164, 165 (Tex.1993) (insured's failure to notify insurer of suit does not relieve insurer from liability for underlying judgment unless the lack of notice prejudices insurer); *see also Risinger*, 960 S.W.2d

at 710; *E.B. Smith Co. v. U.S. Fidelity and Guar. Co.*, 850 S.W.2d 621, 625 (Tex.App.—Corpus Christi 1993, writ denied). Whether an insurer is prejudiced by an untimely notice is generally a question of fact. *See P.G. Bell Co. v. U.S. Fidelity and Guar. Co.*, 853 S.W.2d 187, 192 (Tex.App.—Corpus Christi 1993, no writ). In the instant case, there is a fact question as to (1) whether insurers were actually prejudiced at the time they learned of default, given Duzich's success at that point in challenging its validity, and (2) whether the prejudice they suffered derived from Duzich's negligence, or from some other source (such as in Baham's failure to properly serve Duzich).

Appellees rely on the decisions of certain Texas courts which have held that failure to give notice to the insurance company of a claim, until after a default judgment is entered, is prejudicial to the insurance company as a matter of law. *See Cruz*, 883 S.W.2d at 165; *Kimble v. Aetna Cas. and Sur. Co.*, 767 S.W.2d 846, 850 (Tex.App.—Amarillo 1989, writ denied). Adherence to such a bright-line rule in this case, however, would not further the purpose of such a clause, nor would it be in accord with the canon of construing ambiguities in contracts against the drafter. In each case cited by appellees, the insureds were aware that a suit was pending against them, yet through negligence, failed to notify their insurance companies. *See Weaver v. Hartford*, 570 S.W.2d 367 (Tex.1978) (insured was served but left the papers in the office of the plaintiff's attorney, and never forwarded them to the insurance company); *Chiles v. Chubb Lloyds Ins.*, 858 S.W.2d 633 (Tex.App.—Houston [1st Dist.] 1993, writ denied) (insured did not notify his insurance company of the suit until after the trial which found him liable was completed); *Members Mut. Ins. Co. v. Cutaia*, 476 S.W.2d 278 (Tex.1972) (insured did not forward copies of the service to his insur-

---

9. The insurance contract at issue in this case does not require "prejudice" before the company may assert a "late notice" defense. Texas Board of Insurance Order No. 23080 requires a showing of prejudice before allowing a "late notice" defense on any general liability policy, however. *Chiles v. Chubb Lloyds Ins. Co.*, 858 S.W.2d 633, 635 (Tex.App.—Houston [1st Dist.] 1993, writ

denied); STATE BD OF INS, REVISION OF TEXAS STANDARD PROVISION FOR GENERAL LIABILITY POLICIES—Amendatory Endorsement—Notice, Order No. 23080 (March 13, 1973). MOAC and Fidelity have alleged this is not an ordinary general liability policy, as there is no attendant duty to defend, only to indemnify.

ance company); *Kimble,* 767 S.W.2d 846 (defendant did not notify insurance company of suit until after entry of default judgment); *Dairyland County Mut. Ins. Co., v. Roman,* 498 S.W.2d 154 (Tex.1973) (untimely defense was proffered that, because insured had violated the policy by not providing insurance company with written notice of the accident, it should not be liable for damages incurred in third party action against insured). In all of these cases, the insureds were aware they were being sued, and had been served process of the suit. Their failure to forward the paperwork to their insurance companies could be attributed to their own negligence. Such is not the circumstance in the case at hand, where Duzich has attested that he was never served, or otherwise notified, of the Baham action until after entry of the judgment.

 Moreover, even if notice was not deemed timely, a recognized defense to the late notice exists where the insured did not know of the proceedings against him until entry of a default judgment. *See* TEX. JUR.3d *Insurance* § 947; *Employers Cas. Co. v. Scott,* 513 S.W.2d 642 (Tex.Civ.App.—Corpus Christi 1974, no writ). Although there are no Texas cases with an analogous scenario, several courts in other states have concluded that an insured who does not have notice of a claim against him until after entry of a default judgment has a legitimate excuse for failing to timely notify his insurer of any such claim, and the insurer is not excused from its duty to defend. *See e.g.; Brown v. Donders,* 42 Ohio St.2d 133, 326 N.E.2d 647 (1975); *Commercial Contractors Corp. v. Am. Ins. Co.,* 152 Conn. 31, 202 A.2d 498 (1964); *St. Paul Mercury Indem. Co. v. Valdosta,* 253 F.2d 667 (5th Cir.1958). Generally, the sufficiency of the excuse proffered by an insured for his failure to timely notify the insured of a claim is a question of fact for a jury to determine, unless the facts are undisputed. APPELMAN, INS. LAW AND PRACT. § 4731.

Construing the facts presented in the instant case in a light most favorable to Duzich, there is no dispute that he did not receive notice of any claim, written or otherwise, until *after entry of a default judgment.* However, there are fact issues regarding whether Cox was the insurer's actual or apparent agent, whether Duzich's notice to Cox before judgment, or to MOAC after default judgment was timely, and if not, whether he had a viable defense to the untimely notice. The warranty required him to forward all "papers, ... as soon as practical." If Duzich was not served with any legal papers until after default judgment had been entered, and he promptly notified his insurers upon his notification of legal proceedings, we cannot say that, as a matter of law, he did not comply with the warranty provision.

 In determining whether the insurers had a reasonable basis for denying Duzich's claim, we consider the facts before the insurer at the time the claim is denied. *Viles v. Security Nat'l Ins. Co.,* 788 S.W.2d 566, 567 (Tex.1990). The correspondence offered as summary judgment evidence by Duzich indicates that MOAC and Fidelity were aware of the circumstances of Baham's actions prior to their decision to deny coverage. Whether Duzich had previously reported claims through Whitney–Vaky, and whether the insurers accepted this type of reporting in the past is disputed. When it is disputed whether there was any reasonable basis in existence to support the denial of the claim, a jury issue is present. *Nationwide Mut. Ins. Co. v. Crowe,* 857 S.W.2d 644, 648 (Tex. App.—Houston [14th Dist.] 1993), *judgment set aside per agreement,* 863 S.W.2d 462 (Tex.1993).

### DUTY TO DEFEND

We next consider Duzich's contention that MOAC and Fidelity had a duty to defend him in the Baham action, and the collection proceedings that ensued, and also to post bond to release his vessel, so that he could continue to earn a living pending resolution of the claims. MOAC and Fidelity argued that their policy did not require them to defend him in any action, only to indemnify. They also alleged that they had no duty to post bond, and that the seizure of Duzich's vessel was a contingency that was specifically excepted from coverage. Again, resolution of these issues requires us to examine the policy itself, and construe it according to the

rules for the interpretation of insurance policies.

## SPECIFIC EXCLUSION?

MOAC asserted its policy specifically excluded from coverage payments related to the arrest and seizure of the vessel. The paragraph relied upon by MOAC reads, in its entirety,

Any loss, damage, or expense sustained by reason of any taking of the vessel by requisition or otherwise, civil war, revolution, rebellion, or insurrection, or civil strife arising therefrom, capture, *seizure, arrest, restraint or detainment,* or the consequences thereof or of any attempt or threat; or sustained in consequence of military, naval or air action by force of arms; or sustained or caused by mines or torpedos or other missiles or engines of war ... and any such loss, damage and expense shall be excluded from this policy without regard to whether the assured's liability in respect thereof is based on negligence or otherwise, and whether in time of peace....

The clause which MOAC cites as an exclusion appears to apply to situations of warfare and international strife, where the vessel may be damaged or seized. Given the context of the exclusion relied upon by MOAC, it does not appear to apply to the situation of an *in rem* action brought in satisfaction of a judgment debt. Such conclusion is fortified by comparing it to the language obliging MOAC to pay costs and expenses incurred in defending suit against Duzich or arising out of his liability. Because the meaning of the exclusion is subject to more than one interpretation, we construe it against the insurers. *See Barnett v. Aetna Life Ins. Co.,* 723 S.W.2d 663, 666 (Tex.1987); *Ohio Cas. Group of Ins. Companies v. Chavez,* 942 S.W.2d 654, 658 (Tex.App.—Houston [14th Dist.] 1997, writ denied).

Moreover, Duzich averred that "anytime I had claims or needed to make a claim, it was always made to MOAC through Whitney–Vaky, and I was always contacted by an adjuster who would identify themselves as representing MOAC." He also indicated that MOAC had always provided a defense for

him in third party actions. Given that Duzich's evidence showed that he had notified Cox of injuries occurring on his boat on the day of Baham's injury, and that MOAC always represented him when he notified them of claims in this manner, and that MOAC and Fidelity have not presented evidence which disproves the role played by Cox and Whitney–Vaky, we conclude that the pattern and practice observed by Duzich and the insurance companies indicate that his conduct was, at least when viewed in a light most favorable to him, in full compliance with the policy's warranty provision.

After reading the context of the provision referenced by MOAC, and the provisions located elsewhere, we believe there is a fact issue with respect to the insurers' duties under the policy. Clearly, the forfeiture of the boat, the incurrence of costs associated with its seizure, and the costs incurred by Duzich in defending against the Virginia action, together with Coastal Bend's collection proceedings, all flowed from Baham's personal injury action. Viewed this way, these costs are provided for under the policy, as referenced above.

By point of error four, Duzich complains the court erred in granting summary judgment against his DTPA and Insurance Code claims because appellees did not conclusively establish that they were barred by the statute of limitations, nor did they raise issues related to his claims.

A summary judgment is proper for a defendant if it conclusively establishes all elements of an affirmative defense. *Munoz v. Gulf Oil Co.,* 693 S.W.2d 372, 373 (Tex. 1984). When a defendant moves for summary judgment on the basis of limitations, it must prove that limitations have run as a matter of law. *See Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984). Once the defendant establishes the right to summary judgment, the plaintiff must then put forward summary judgment evidence to avoid the limitations defense. *Palmer v. Enserch Corp.,* 728 S.W.2d 431, 435 (Tex.App.—Austin 1987, writ ref'd n.r.e.). If the plaintiff responds with evidence creating a fact question on the tolling of limitations or the accru-

al of the cause of action, the defendant must conclusively negate the tolling of the statute or the plaintiff's position on the accrual of the cause of action. *See id.* at 436.

■ An action brought under the DTPA must commence within two years after the date of the false, misleading or deceptive act or practice, or when the use of reasonable diligence would have discovered the violation. TEX. BUS. & COMM.CODE ANN. § 17.565 (Vernon 1987). A cause of action against an insurer for breach of the common law duty of good faith and fair dealing and violations of the DTPA accrue on the date the insurer denies the insurance claim or denies coverage. *Celtic Life Ins. Co. v. Coats,* 885 S.W.2d 96, 100 (Tex.1994); *Murray v. San Jacinto Agency, Inc.,* 800 S.W.2d 826, 828 (Tex.1990); *Stevens v. State Farm Fire and Cas. Co.,* 929 S.W.2d 665, 670–71 (Tex.App.— Texarkana 1996, writ denied); *Burton v. State Farm Auto. Ins. Co.,* 869 F.Supp. 480 (S.D.Tex.1994), *aff'd,* 66 F.3d 319 (5th Cir. 1995).

Duzich alleged numerous acts upon which DTPA claims may have been based. However, it appears that all of Duzich's contentions are essentially rooted in MOAC and Fidelity's failure to fulfill their obligations under the policy, or, alternatively, their failure to act in good faith and deal fairly with Duzich. He first learned of his insurers' posture when he received his first letter from Buchanan dated January 21, 1982, indicating that coverage probably would be denied based on untimely notice. He received ultimate confirmation of this posture by letter dated January 28, 1982, when Buchanan informed Duzich that MOAC had decided to deny coverage.

■ Duzich did not file the instant lawsuit until June 1985, more than two years after MOAC and Fidelity's rejection of his claim. Although Duzich maintains the misrepresentations were continuing, he has not identified any particular misrepresentations or deceptive actions that occurred within the applicable limitations period (*i.e.* within the two years prior to his filing the instant lawsuit). Accordingly, we conclude that his DTPA claims were barred by limitations.

■ With respect to Duzich's contention that his claims under article 21.21 of the Insurance code were not barred by limitations, we refer to the version of the statute that applies to the cause. The applicable limitations provision of the insurance code in effect at the time required that a suit against an insurer be instituted within two years of the time the damages were incurred, not when the conduct occurred. *See* Act of May 21, 1973, 63d Leg., R.S., ch. 143, § 2, 1973 Tex. Gen. Laws 322, 338, *amended by* Act of March 13, 1985, 69th Leg., R.S., ch. 22, §§ 3– 4, 1985 Tex. Gen. Laws 395, 395–96. Unlike the bad faith and DTPA claims, the limitations period did not commence with the date on which the actionable conduct occurred (although under the current version of the insurance code it does).

Thus, in the instant case, the damages alleged by Duzich include the forfeiture and sale of his boat and the entry of an agreed judgment in the federal action. His boat was sold on October 20, 1982. The agreed judgment was entered on June 11, 1984. He sued MOAC and Fidelity on June 1985. Viewing Duzich's consent decree acknowledging the foreclosure of the vessel and obliging him to pay the proceeds to Baham, the U.S. Marshal, and MOAC as the relevant date of his damages being realized, we hold the suit was within the applicable limitations period for claims arising under the insurance code.

■ MOAC and Fidelity did not raise the statute of limitations as a defense to Duzich's claim for a breach the common law duty of good faith and fair dealing, and therefore summary judgment could not be granted on that basis. *Chessher v. Southwestern Bell Tel. Co.,* 658 S.W.2d 563, 564 (Tex.1983); *Villacana v. Campbell,* 929 S.W.2d 69, 76 (Tex.App.—Corpus Christi 1996, writ denied).

Point of error four is overruled with respect to the DTPA claims, but is sustained with respect to the insurance code and good faith and fair dealing claims.

■ By point five, Duzich contends the court erred in concluding that the Miss Suni Suzanne is not an assured under the policy.

The court did not make any explicit finding with respect to this issue, but it appears that Duzich is relying on MOAC's duty to indemnify the "assured," and the vessel was the defendant in the *in rem* actions. The policy issued by Fidelity specifically named "the assured." At the top of each policy, next to a line styled "assured," the name John Duzich appears. The Miss Suni Suzanne is not mentioned. Based on the clear language of the policy, the Miss Suni Suzanne is not an assured under the policy. However, for reasons set out above, a fact issue exists as to whether, and to what extent, MOAC and Fidelity were required to participate in the *in rem* proceedings, which clearly flowed from Duzich's liability to Baham.

By point six, Duzich contends the court erred because the costs and expenses related to the arrest of the vessel and its ultimate loss were caused by MOAC's and Fidelity's negligence and wrongful conduct. We need not address this point because appellant has not presented argument and authorities under this point as required by TEX.R.APP. P. 38.1(h).

■ By point seven, he contends that both MOAC and Fidelity are proper parties to his and the vessel's claims because MOAC was an issuer of the policies, adjusted the claim, denied the claim, and MOAC and Fidelity are responsible for any loss under the policy. We agree that fact issues exist with respect to which insurers are responsible to Duzich for any liability which might be incurred, given the roles each played in the execution of the policies, handling of claims, and the correspondence related to the Baham and Coastal Bend claims in particular. Each of their names appear on the policy, though Fidelity is named as the insurer. When Duzich received correspondence regarding coverage, the letters were written on behalf of MOAC. Point seven is sustained.

## POINTS OF ERROR RELATED TO FCB AND COASTAL BEND

■ By point of error ten, eleven and twelve, respectively, Duzich contends the court erred in granting a deficiency judgment against him and in favor of FCB, as assignee of Coastal Plains, and failing to

grant his motion for summary judgment because such claims are barred by *res judicata,* collateral estoppel, and statute of limitations. We address the limitations argument because we find it dispositive.

We have previously addressed the issue of what limitations period, if any, is to be applied in a claim for debt under the Federal Ship Mortgage Act. In *Ocean Transp., Inc. v. Greycas, Inc.,* 878 S.W.2d 256 (Tex.App.—Corpus Christi 1994, writ denied), we observed that state and federal courts have concurrent jurisdiction over *in personam* actions under the Act. *Id.* at 266. We noted the Fifth Circuit's acknowledgment that the court stated that state law may occasionally "fill the gaps in an incomplete and less than perfect maritime system." *Id.* (citing *J. Ray McDermott & Co. v. Vessel Morning Star,* 457 F.2d 815 (5th Cir.1972)). Because no federal limitations statute specifically governs deficiency suits under the Act, we applied the Texas rule of limitations. *Id.*

■ Under Texas law, a person must bring suit on a debt no later than four years after the day the cause of action accrues. TEX. CIV. PRAC. & REM.CODE ANN. § 16.004(a)(3) (Vernon 1986). The question of when a cause of action accrues is a question of law for the court to decide. *Moreno v. Sterling Drug,* 787 S.W.2d 348, 351 (Tex. 1990). A cause of action generally accrues at the time when facts come into existence which authorize a claimant to seek a judicial remedy. *Murray v. San Jacinto Agency, Inc.,* 800 S.W.2d 826, 828 (Tex.1990); *Greycas, Inc.,* 878 S.W.2d at 267.

Because the statute of limitations is an affirmative defense, TEX.R. CIV. P. 94, it was Duzich's burden to plead, prove, and secure findings to sustain its plea of limitations. *Woods v. William M. Mercer, Inc.,* 769 S.W.2d 515, 517 (Tex.1988). He did timely plead the limitations defense to FCB's counterclaim.

Coastal Plains and FCB judicially admitted he defaulted on or before July 19, 1982. Duzich offered as summary judgment evidence pleadings filed by Coastal Bend in federal court, cause C–82–145, against the

Miss Suni Suzanne, *in rem* and John Duzich, *in personam*, wherein it alleged

> Prior to the day of filing hereof, in person-am Defendant, John Duzich, had become delinquent in the payment due upon said notes and Mortgage, and the same have, therefore, matured and become immediately due and payable in full. As of April 19, 1982, the balance due under the said Notes and Mortgages on account of principal and interest was the sum of Two Hundred Twenty–Three Thousand Three Hundred Twenty Three and 22/100 ($223,323.22) Dollars, and interest continues to accrue on the principal sum at the rate of at least Ninety–Nine and 29/100 ($99.29) Dollars per day until paid. The entire said amount, both principal and interest, is now due and owing and no part thereof had been paid, despite Plaintiff's demand therefor, to such damages in the stated amount.

Neither Coastal nor FCB dispute the veracity of the complaint offered by Duzich, nor does either dispute that Coastal was aware of Duzich's default no later than July 1982, when it filed its complaint.

The parties dispute Duzich's personal liability, based on what transpired in the federal court. Duzich maintains Coastal and FCB released him from all liability, while Coastal and FCB maintain that Duzich never appeared, and therefore his personal liability could not have been adjudicated, and the plain language of the consent decree indicates that no release from personal liability was either contemplated or agreed to.

In June 1985, Coastal sent a demand letter to Duzich. Days later, Duzich moved for declaratory relief that he was no longer liable on the note. It was not until October 28, 1989 that FCB added its counterclaim to collect the balance due on the note.

■ Based on the undisputed evidence, we conclude that Coastal's right to sue for the debt accrued in 1982. FCB, as successor in interest to Coastal, is entitled to the same rights, and is subject to the same restrictions, as was Coastal. *Federal Debt Management, Inc. v. Weatherly*, 842 S.W.2d 774, 777 (Tex.App.—Dallas 1992), rev'd on other grounds, 883 S.W.2d 171 (Tex.1994) ("Under

Texas law, however, a holder in due course is still subject to a valid limitations defense."); *Cooper v. Hampton*, 123 S.W.2d 941, 942 (Tex.Civ.App.—Amarillo 1938, writ dism'd). Under no construction of the facts can Coastal Bend/FCB's action on the debt, first raised in pleadings dated October 28, 1989, be construed as falling within four years of the accrual of its cause on action. As such, we hold that the trial court erred as a matter of law, and should have granted summary judgment against FCB and in favor of Duzich.

We need not decide the issues presented with respect to the federal consent decree because we hold that, even if Coastal Bend and FCB could have sought satisfaction of the note against Duzich personally after the decree, they did not attempt to do so until 1989, after limitations had expired, and therefore the issue is moot.

Point of error twelve is sustained. Points of error ten, eleven, thirteen, and fifteen are rendered moot by our disposition of point twelve. Because they are unnecessary to the disposition of this appeal, we will not address them. TEX.R.APP. P. 47.1.

Duzich challenges the summary dismissal of his usury, DTPA claims against FCB and Coastal Plains. FCB and Coastal Plains maintain that dismissal of those claims was proper because each claim is preempted by federal law. They argue in the alternative that such claims are barred by limitations.

■ In order for all state causes to be preempted, the federal law must so completely preempt the field that any suit that sounds in that area necessarily is a federal action. *Brown v. Crop Hail Management, Inc.*, 813 F.Supp. 519, 523 (S.D.Tex.1993). Federal preemption of state law can occur in three situations: (1) where Congress explicitly preempts state law; (2) where Congress impliedly preempts state law because it has occupied the entire field; and (3) where preemption is implied because there is an actual conflict between federal and state law. *Schneidewind v. ANR Pipeline Co.*, 485 U.S. 293, 300, 108 S.Ct. 1145, 99 L.Ed.2d 316 (1988).

██ In determining the preemption issue, our sole task is to ascertain the intent of Congress, and an intent to preempt is not lightly presumed. *California Fed. Sav. & Loan Ass'n v. Guerra,* 479 U.S. 272, 280–81, 107 S.Ct. 683, 93 L.Ed.2d 613 (1987). The presumption is that the federal law does not displace existing state law. *Maryland v. Louisiana,* 451 U.S. 725, 746, 101 S.Ct. 2114, 68 L.Ed.2d 576 (1981). Preemption must be the clear and manifest purpose of Congress. *Rice v. Santa Fe Elevator Corp.,* 331 U.S. 218, 230, 67 S.Ct. 1146, 91 L.Ed. 1447 (1947). We must determine whether Congress intended federal regulation to supersede state law. *Louisiana Pub. Serv. Comm'n,* 476 U.S. 355, 369, 106 S.Ct. 1890, 90 L.Ed.2d 369 (1986); *Dallas/Fort Worth Intern. Airport Bd. v. City of Irving,* 854 S.W.2d 161, 166–67 (Tex.App.—Dallas 1993), *vacated on other grounds,* 868 S.W.2d 750 (Tex.1994) (per curiam).

██ We agree with FCB and Coastal Plains that any claim of usury deriving from a mortgage executed under the federal act must be governed by federal law rather than state law. Unlike the limitations issue, the federal act does expressly address the question of rates that are to be charged under the act. *See* 46 U.S.C. § 926(d). Because there is no void in the statutory scheme, and because the scheme is intended to provide uniformity with respect to the citation and foreclosure of preferred ship's mortgages, "there is no room for the operation of state law." *Harrison Overseas Corp. v. American Barge Sun Coaster,* 475 F.2d 504, 507 (5th Cir.1973) (declining to consider claim that interest charged was usurious under Georgia law). Point of error fourteen is overruled.

██ We disagree with the lenders, however, to the extent that they allege any state cause of action arising out of a mortgagee's conduct is prohibited. There is nothing in the federal act that creates an exclusive set of remedies for debtors. An array of torts may tag-along to an unscrupulous lender's actions deriving from a preferred ship mortgage. There is no basis for categorically barring any state claims that arise in such contexts. Indeed, in a case relied on by FCB and Coastal Plains, the Fifth Circuit made no reference to the impossibility of pursuing a state claim tangentially related to the federal ship mortgage act, and in fact ordered a trial on the debtor's breach of contract claim, which clearly is a state cause of action. *McDermott & Co. v. Vessel Morning Star,* 457 F.2d at 817. Accordingly, Duzich's DTPA and negligence claims were not preempted as a matter of law. Point of error sixteen is sustained.

██ We next consider whether Duzich's claims are barred by limitations. His original petition sought only a declaration that he owed no more money on the note; he asserted no claims to positive relief against either Coastal Plains or FBC. After Coastal Plains and FCB filed a counter-claim, seeking declaration that he did owe money, and that he should be obligated to pay it, Duzich amended his petition to include various claims.

On August 14, 1987, he amended his petition to include allegations of negligence, gross negligence, intentional infliction of emotional distress, negligent infliction of emotional distress,[10] and unfair debt collection practices. Each of these causes have two year statutes of limitations. TEX. CIV. PRAC. & REM.CODE ANN. § 16.003; TEX.REV. CIV. STAT. ANN. § 5069–11.11; TEX. BUS. & COM.CODE ANN. § 17.565.

On February 1, 1989, Duzich amended his pleadings to add allegations of breach of contract and breach of fiduciary duty against Coastal Plains for its refusal to allow the release of his vessel in March of 1982, after it had been seized in the Baham action. He also contends that Coastal Plains wrongfully refused to lend him money around this time. These additional causes of action have two year limitations periods as well.

It is clear that, under any construction, Duzich's allegations against the lenders were rooted in their actions in 1982. At the latest, the allegations encompass action in June 1985, when Coastal Bend sent the demand

---

**10.** There is no general duty not to negligently inflict emotional distress. *Boyles v. Kerr,* 855 S.W.2d 593 (Tex.1993).

letter to Duzich. Were it not for the fact that Duzich already had a lawsuit timely filed against these insurers and for declaratory relief against his lenders, his assertion of these allegations in August 1987 and February 1989 would clearly be outside limitations. We must consider the impact of the pending declaratory judgment action on these new claims.

Duzich contends section 16.068 of the civil practice and remedies code precludes the exercise of limitations bar on these supplemental pleadings. That section reads,

> If a filed pleading relates to a cause of action, cross action, counterclaim, or defense that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitation *unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence.*

Tex. Civ. Prac. & Rem.Code Ann. § 16.068 (Vernon 1997) (emphasis ours).

Although all of the claims that were leveled back and forth between the parties were loosely derivative of the same occurrence and transaction, close inspection of the pleadings reveals significant differences. Duzich's initial allegations in his declaratory judgment action were that he had settled his debt with Coastal Plains, and consequently FCB, in federal court. These pleadings in no way referenced any alleged activities on the part of Coastal or FCB in either refusing to lend him money, in refusing to allow his vessel to be released from the marshal's custody, or in sending a demand letter despite his good standing. The alleged settlement and dismissal of the lenders' claims in federal court was the transaction or occurrence that formed the basis of Duzich's claims in the original declaratory judgment action. Coastal Plains' action in not cooperating with Duzich around the time his boat was seized in the Baham action, and the damages that flowed therefrom, is a separate occurrence or transaction.

We conclude that Duzich's claims originating in his first and second amended petitions against Coastal Plains and FCB are barred by limitations as a matter of law. Point of error seventeen is overruled.

We AFFIRM the trial court's dismissal of Duzich's DPTA claims against Fidelity and MOAC, and its dismissal of Duzich's tort and statutory claims against Coastal Plains and Fidelity. We REVERSE the court's summary dismissal of his contract, insurance code, and bad faith claims against Fidelity and MOAC, however, and REMAND those causes to the trial court for further proceedings. We also REVERSE the court's decision with respect to any alleged deficiency owed on the note. Because FCB is barred by limitations from instituting any claim for the deficiency at the time it filed its suit, it cannot collect on the note, and Duzich is entitled to summary judgment on those claims. His declaratory action is moot at this point.