**United States Court of Appeals**
**Fifth Circuit**

**F I L E D**

**August 11, 2006**

**Charles R. Fulbruge III**
**Clerk**

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT
_____

No. 05-51575
_____

CIC PROPERTY OWNERS, CIC Property Owners and Managers
Limited LLP,

                                        Plaintiff - Appellant,

                         versus

MARSH USA INC.,

                                        Defendant - Appellee.
_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:04-CV-658
_____

Before JOLLY, PRADO, and OWEN, Circuit Judges.

E. GRADY JOLLY, Circuit Judge:

    In this appeal, we confront issues of res judicata and
fiduciary obligations relating to settlements of adversarial
litigation.  Because we hold that the release of liability
contained in the settlement agreement between the parties is
enforceable and disposes of this appeal, we do not reach the issue
of res judicata.

                              I

    CIC Property Owners is a risk-management and insurance
consulting firm that obtains volume discounts on insurance policies
for pooled owners of multi-family dwellings.  In 1995, Marsh USA
began providing CIC with brokerage services, from finding insurers

to underwrite coverage to disbursing to the insurers the premiums collected from CIC.  In late 2001, CIC agreed to use Marsh's services exclusively, in return for promises that Marsh would provide CIC with a firm price quote on excess property insurance and would charge only fees and no commission for its services.

In February 2002, CIC filed two lawsuits against Marsh in Texas state court.  In the first, which was removed to federal court, CIC accused Marsh of breaching the service agreement by charging premiums in excess of the firm price quote and by charging commissions in addition to fees.  In the second, which remained in state court, CIC accused Marsh of breaching the service agreement by failing to secure adequate insurance coverage.  CIC and Marsh settled both lawsuits in October 2002.  Under the Settlement Agreement, Marsh paid CIC $1.5 million, CIC dismissed its claims with prejudice, and CIC further agreed to

> unconditionally release[], acquit[], forever discharge[], and covenant[] not to sue, without limitation, Marsh . . . with respect to each and every right, claim, complaint, demand, cause of action, proceedings, and damages of whatsoever kind or nature which CIC now has, has had, or might have relating to or arising out of any act, transaction, or occurrence between the parties, including without limitation each and every claim for any type of relief or remedy whatsoever based upon any theory whatsoever, whether known or unknown at this time, and relating to or arising out of the Placement, the Brokerage Services, or any claims that have been or could have been brought in the Federal Lawsuit or State Lawsuit.

2

After the settlement, however, CIC's audit of the 2000-2001 policy year revealed that Marsh was in possession of $600,000 of unearned premiums owed to CIC from Ace Insurance Company. In response to CIC's request for the return of that sum, Marsh informed CIC that it was also in possession of $61,600 of unearned premiums on a Gulf Insurance Company policy. Marsh wired the $661,000 to CIC. However, CIC's further investigation revealed that Marsh actually owed $83,812 on the Gulf policy. CIC then contacted other insurance carriers about possible overcharges from both the 2000-2001 and 2001-2002 policy years and discovered what it believed to be a pattern of overcharging by Marsh during those policy years. CIC's demands for further repayment were rebuffed, and CIC brought this suit in Texas state court, asserting breach of contract and violations of Texas Insurance Code Article 21.21. Marsh removed to federal court, then moved for summary judgment, arguing that CIC's suit was barred by res judicata and the release of liability contained in the Settlement Agreement. The District Court granted summary judgment on res judicata grounds.

II

This appeal presents two questions: first, whether the District Court erred in holding that the present litigation is precluded by the previous litigation between the parties; and, if so, second, whether summary judgment is nevertheless proper based on the Settlement Agreement's release of liability. We affirm the

3

grant of summary judgment on the basis of the release. Consequently, we do not reach the res judicata issue.

The Settlement Agreement disposing of the two previous actions included the broad release quoted above. CIC "without limitation" "unconditionally release[d]" and "covenant[ed] . . . not to sue" Marsh "with respect to each and every right, claim, complaint, demand, [etc.] . . . which CIC now has, has had, or might have relating to or arising out of any act, transaction, or occurrence between the parties . . . whether known or unknown at this time . . . ." Suffice it to say, the release on its face and in its substance reaches this suit by CIC.

To undermine the efficacy and enforceability of the release, CIC contends that Marsh breached a fiduciary obligation to CIC by securing a release so disadvantageous to CIC. A party owing fiduciary duties to another must show that an agreement between the two is fair and reasonable and that the party to whom the duty is owed was aware of all facts material to the agreement. Keck, Mahin v. Nat. U.F. Ins., Pittsburgh, P.A., 20 S.W.3d 692, 699 (Tex. 2000). The District Court ruled that Marsh was a fiduciary of CIC and that a material fact issue existed as to whether Marsh breached that duty by failing to meet the "fair and reasonable" standard of Keck.

We believe that the District Court erred in analyzing the Settlement Agreement under Keck. Even assuming, arguendo, the

existence of a fiduciary relationship between the parties,[1] the circumstances surrounding the negotiation and execution of the release fatally undermine CIC's claim that Marsh owed and breached a duty to ensure that the Agreement was fair and reasonable to CIC. Unlike the plaintiff in Keck, CIC here was represented by its own counsel in a clearly adversarial negotiation. The parties terminated their business relationship on September 1, 2002, two months before entering into the Settlement Agreement, and CIC hired counsel to review the Agreement. The Agreement itself recites that the parties "had an opportunity to consult with their respective attorneys concerning . . . th[e] agreement"; the parties "voluntarily execute[d] the [agreement] after advice of counsel"; and the agreement was "reviewed by counsel for the parties and approved as to form and content." We decline, absent supporting Texas authority,[2] to attach a presumption of unfairness to a settlement of a formal adversarial proceeding, entered into by two

---

[1]Texas recognizes both formal fiduciary relationships and informal ones arising from a "moral, social, domestic, or purely personal relationship of trust and confidence, generally associated with a confidential relationship." Associated Indem. Corp. v. CAT Contracting, Inc., 964 S.W.2d 276, 287 (Tex. 1998). Marsh argues that Texas law recognizes no fiduciary relationship between an insurance broker and its client. CIC argues by analogy to cases in which the Texas courts have recognized a fiduciary relationship between a securities broker and its customer. See, e.g., Duzich v. Marine Office of Am. Corp., 980 S.W.2d 857, 865 (Tex. App. 1998).

[2]If anything, Texas Supreme Court dictum favors Marsh. The Court in Keck specifically stated that no presumption of unfairness would have arisen regarding the release between the plaintiff and attorney had the plaintiff severed the attorney-client relationship and hired new attorneys before agreeing to the release.

sophisticated parties separately advised by counsel. Consequently, Keck is inapplicable, and the Settlement Agreement's fairness to CIC is irrelevant.

There being no other issue of fact or law raised to contest the enforceability of the release, we must give full effect to its terms. Because the 2002 Settlement Agreement bars CIC's claims, Marsh is entitled to judgment as a matter of law.

### III

In the light of the foregoing, the District Court's grant of summary judgment in favor of Marsh is

AFFIRMED.